**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lydell MARSHALL, Defendant-Appellant.**

**No. 75–3751.**

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1977.

Rehearing Denied Sept. 9, 1977.

---

Corinne M. Hopkins (Court-appointed), New Orleans, La., for defendant-appellant.

Lydell Marshall, pro se.

Gerald J. Gallinghouse, U. S. Atty., Mary W. Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before MORGAN and HILL, Circuit Judges, and NOEL, Senior District Judge.*

* Senior District Judge for the Southern District of Texas sitting by designation.

NOEL, Senior District Judge:

In this appeal, Lydell Marshall seeks the reversal of his conviction on the third count of an indictment that charged him with willfully understating his income for the year 1971 in violation of 26 U.S.C. § 7201.[1] The first and second counts charged that Marshall also understated his income for the years 1969 and 1970. The jury returned a verdict of "not guilty" as to those two years. To establish its case, the Government employed the cash expenditures method of proof. That method consists of showing that the sum of a defendant's expenses and disbursements for a particular taxable year exceed the total of his reported income, nontaxable receipts, and available cash at the beginning of the year in question. For the year 1969, the Government projected Marshall's adjusted gross income as $9,930.11, whereas Marshall reported an income of $4,670.00. In 1970, Marshall reported his adjusted gross income as $6,950.00, whereas the Government projected a total of $17,414.21. In 1971, the year for which Marshall was convicted, the Government projected an adjusted gross income of $12,248.11 as against a reported income of $5,399.00. The Government projected that Marshall owed an additional $1,927.61 in income taxes for 1971. Marshall admitted during cross-examination that he won substantial sums at gambling that he did not report on his income tax returns.

Marshall argues two points of error. First, he alleges that the Government failed to establish the amount of his opening available funds for *each* of the taxable years in question, including the year 1971 for which he was convicted. Second, Marshall argues that the Government's summary witness placed before the jury summary figures that contained mathematical errors, as well as figures that were not justified by

direct testimony, so as to create a false impression of consistent understatement and intention to defraud. We have tested these arguments against the requirement that we view the evidence in its most favorable light to the Government,[2] and have concluded that the evidence presented was clearly sufficient to sustain the jury's verdict. Accordingly, we affirm the conviction.

As authority for his contention that the Government must prove the opening available funds for *each* year of the taxable years in question, Marshall relies on *Dupree v. United States,* 218 F.2d 781 (5th Cir. 1955). In that case, as here, the Government employed the expenditures method of proof to show that the defendant willfully understated his income. This Court reversed the conviction because the Government failed to establish the opening available funds for the pertinent time period. This Court explained:

> The trial court below properly charged that each prosecution year must stand alone, and that the Government must prove opening available funds for each year; for, obviously in a prosecution for the year 1946, there would be a complete failure of proof unless the excess expenditures shown were shown to have come from income received during 1946 instead of being expenditures in 1946 of accumulations from prior years, or even of unreported income for 1945 or prior years.

218 F.2d at 785. Thus, where the Government employs the expenditures method of proof, it must prove that yearly expenditures exceeded reported income *and* it must establish, either directly or inferentially, that the expenditures were made from taxable income. Where both requirements are not met, a conviction cannot stand. *E. g., Marcus v. United States,* 422 F.2d 752 (5th Cir. 1970).

---

1. That statute provides:

   Any person who· willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be quilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the cost of prosecution. Aug. 16, 1954, c. 736, 68A Stat. 851.

2. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); *Fitzpatrick v. United States,* 410 F.2d 513 (5th Cir. 1969).

**530**

■ Appellant reads *Dupree* as requiring the Government to affirmatively prove the amount of Appellant's opening available funds for each of the taxable years in question. This reading of *Dupree* is correct, for it is altogether clear that in cases where the expenditures method of proof is employed the Government must present evidence that sufficiently excludes the possibility that the defendant relied on previously accumulated assets rather than on unreported taxable income.[3] However, subsequent decisions of this Court have made clear that the Government may establish the opening available funds for a beginning year and proceed to show the total of taxable and nontaxable receipts for the following consecutive years to prove its case. *E. g., United States v. Penosi,* 452 F.2d 217 (5th Cir. 1971), *cert. denied,* 405 U.S. 1065, 92 S.Ct. 1495, 31 L.Ed.2d 795 (1972); *United States v. Cook,* 505 F.2d 659 (5th Cir. 1974), *cert. denied* 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975). Where that is done, the opening available funds for the beginning year (gifts, inheritance, and the like) and income received less disbursements paid during the beginning year establish the opening available funds for the following year. In addition to establishing a defendant's opening available funds, the Government also has the burden of proving that the expenditures in question were not made from other nontaxable sources, such as gifts, loans, or bequests.

In this case, an Internal Revenue Service agent testified in the form of a stipulation between counsel that he and other agents investigated Marshall's assets as of December 31, 1968, as well as nontaxable sources of income to Marshall during the following three years, including sales of assets, inheritances, insurance proceeds, bank accounts, and gifts. The investigation included a survey of some 60 banking and financial institutions in the New Orleans Metropolitan area, as well as interviews of Marshall's family and friends. Marshall does not question the investigation's thoroughness, and on the basis of the record we are of the view that the investigating agents did all they could be reasonably expected to do to uncover Marshall's assets. *See United States v. Beasley,* 519 F.2d 233 (5th Cir. 1975), *vacated on other grounds,* 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976); *United States v. Newman,* 468 F.2d 791 (5th Cir. 1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973). The investigation did uncover the existence of a bank account and certain capital and nontaxable assets that Marshall received during the three year period from 1969 to 1971 for which he was given credit in the Government's case.[4]

■ Marshall's defense was that he possessed a cash hoard at the end of 1968 amounting to approximately $7,000. He argued that the expenditure of that cash fund explained the discrepancy between his expenditures and his reported income. The Government introduced evidence showing that Marshall would have had to save 13½% of his income of approximately $5,300 a year from 1958 to 1968 to accumulate $7,000, and that Marshall made substantial credit purchases during 1969, 1970 and 1971. The Government also showed that the investigation of Marshall's affairs disclosed no corroborating evidence of the cash hoard. The issue was essentially one of defendant's credibility and viewed in its entirety, the evidence presented of Marshall's opening net worth in 1969 and his expenditures and receipts during the following two years was sufficient to allow a

---

**3.** This requirement implements the rule that in circumstantial evidence cases the Government must introduce evidence from which the jury might reasonably conclude that every reasonable hypothesis has been excluded but that of guilt. *E. g., United States v. Willoz,* 449 F.2d 1321, 1323 (5th Cir. 1971); *Vick v. United States,* 216 F.2d 228, 232 (5th Cir. 1954).

**4.** The Government credited Marshall with $1,300 of nontaxable income in 1969 from the sale of two automobiles. For the year 1970, Marshall was credited with $2,175 in nontaxable receipts from withdrawals from his savings account. For the year 1971, Marshall was credited with receiving $3,452.18 in settlement of a lawsuit for personal injuries, and of a withdrawal of almost $1,000 from his savings account.

reasonably minded jury to validly draw the inference that Marshall possessed no cash hoard at the beginning of 1971, the year in question.

Appellant also contends that the figures that the Government's summary witness presented to the jury contained certain mathematical errors and did not fairly reflect the direct evidence presented by the Government. Although several of these alleged errors concern the 1969 and 1970 tax years, we nonetheless must address them here because any error with respect to those years might affect the existence or size of a cash asset at the beginning of 1971. Initially, appellant argues that he ought not have been charged with expenditures of some $11,791.11 in alleged capital contributions in 1970 and 1971 to a business in which he was a partner. It is true that the uncontroverted evidence showed that appellant himself did not make those contributions to the partnership's capital account. Those sums were actually deposited to his account by another partner. It is equally true, however, that the jury could reasonably have found that those sums contributed on appellant's behalf were in payment for services rendered to the partnership and taxable as ordinary income as such. Appellant also complains that the Government summary figures reflected that he deposited $1,000 more to his savings account in 1969 than he actually did. The exhibits introduced into evidence at trial bear out this assertion, and show that the $1,000 deposit ought to have been reflected as having been made in 1970. This error could have no possible bearing on the jury's finding of guilt with respect to 1971 taxable year. The salient point in this regard is that the error could not have misled the jury into assuming that appellant had *less* funds on hand at the beginning of 1971 than he actually did. Appellant has alleged one other error in the Government's summary figures involving the Government's failure to credit Appellant with an $800 gift. Even assuming that this omission constituted error of some form, we find it harmless as a matter of law. Even had appellant been credited with $800 in nontaxable income in 1971, the overwhelming weight of the evidence would nonetheless have demonstrated that appellant substantially understated his income.

AFFIRMED.