UNITED STATES of America,
Plaintiff-Appellee,

v.

Bartley BURNS and Lawrence Kelly,
Defendants-Appellants.

Nos. 81–2024, 81–2028.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1982.

Decided July 16, 1982.

Sam Adam, Julius L. Echeles, Chicago, Ill., for defendants-appellants.

Robert C. Knuepfer, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL, Circuit Judge, GIBSON,* Senior Circuit Judge, and ESCHBACH, Circuit Judge.

PER CURIAM.

One of the issues presented in these federal criminal appeals concerns a situation in which the trial judge, in response to a request from the jury for a supplementary instruction, entered the jury room during deliberations without advance notice to the defense and gave the jurors an oral definition of an element of one of the offenses charged in the indictment. Because of our concern for the orderly conduct of a trial by jury in a federal criminal case, we reverse and remand defendants' convictions as to the count which was the subject of the supplementary instruction. Finding no reversible error pertinent to the other counts of which defendants were convicted, we affirm the convictions on those counts and remand for resentencing in accordance with this decision.

I

Between 1974 and 1980, several high-ranking employees of the Cook County (Illinois) Board of Appeals effectuated thousands of unlawful property tax reductions by covertly circumventing the Board's procedures concerning applications for assessment reductions. They relied on others, known as "runners," to contact taxpayers and solicit payments from them in exchange for arranging reduced property tax assessments. The runners collected payments from the taxpayers concerned and divided the proceeds with the Board employees who participated in the scheme. Defendants Bartley Burns and Lawrence Kelly were accused of serving as "runners." They maintain that they had no knowledge of the unlawful nature of the scheme in question. In a multiple count indictment, they were both charged with several counts of mail fraud and one count of conspiracy to violate the mail fraud and antiracketeer-

ing laws. Kelly was also charged with tax evasion and obstruction of a criminal investigation. The jury acquitted Burns on three mail fraud counts (counts 24, 26 and 30) but found him guilty on the conspiracy charge (count 1) and on seven mail fraud counts (counts 22, 23, 25, 27, 28, 29 and 31). His disposition as to count 1 involved a 3 month sentence and a $10,000.00 fine; as to counts 22, 23, 25, 27, 28, 29 and 31, he received concurrent sentences of three years probation, consecutive to the sentence on count 1. Kelly was found guilty on the conspiracy charge (count 1), the tax evasion and obstruction charges (counts 41 and 90) and on nine mail fraud counts (counts 32 through 40). Kelly received a sentence of fifteen months on count 1, he was fined a total of $5,000 on counts 32 through 40, and he received concurrent sentences of 3 years probation on counts 41 and 90, to run consecutively to the sentence on count 1.

In addition to their challenge to the judge's private contact with the jury, defendants argue as to the conspiracy charge (count 1) that the antiracketeering statute does not apply to corruption within the Cook County Board of Appeals and that there was a prejudicial variance between the conspiracy charged in the indictment and the evidence adduced at trial. Defendants also attack a jury instruction concerning the issue of guilty knowledge.

II

After the jury had been fully instructed by the court and had been engaged in deliberations for several hours, one juror apparently encountered some difficulty as to the meaning of the term "overt acts" with reference to the conspiracy count. Although the record does not indicate how the matter was brought to the court's attention, it is clear that the trial judge responded by entering the jury room accompanied only by the court reporter, whereupon he voiced a supplementary instruction defining an "overt act." The resulting colloquy in the

* The Honorable Floyd R. Gibson, United States Senior Circuit Judge for the Eighth Circuit, sitting by designation.

jury room, which occurred without advance notice to defendants or defense counsel, was transcribed by the court reporter as follows:

The Court: Good afternoon.

You asked what the definition of an overt act is.

A Juror: Yes.

The Court: An overt act is an open or manifest act. It is not what somebody thinks or plans; it is what somebody does.

In this case, it is charged that one or more of the things happened in paragraphs 12 through 17 or paragraphs 22 through 41, and these were done in furtherance of, according to the Government, the conspiracy.

So, an overt act in that context is one of those active type actions, if proved, in furtherance of the conspiracy, if proved, as distinguished from something that somebody just planned or thought about but didn't take any action on.

A Juror: Something actually happened?

The Court: Something that actually happened.

Does that help?

A Juror: Okay.

The Court: So, what the Government is charging is that certain things happened or at least one of them happened, and that what that was was in furtherance of the conspiracy as defined in the instructions.

A Juror: Everybody understand?

A Juror: Yes.

A Juror: I think so.

A Juror: That clears it up. Thank you.

Defendants raise three challenges to this conversation. They argue that it was a violation of their Sixth Amendment right to be present at all stages of the proceedings; they argue that it was a violation of Rule 43(a), Federal Rules of Criminal Procedure; and they argue that the supplementary instruction was a misleading statement of the

law. Since we sustain their contention under Rule 43(a), we need not address the constitutional issue and we likewise decline to evaluate the legal soundness of the supplementary definition.

■ Rule 43(a) provides as follows:

The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

While we are certain that the trial judge was acting with the best of intentions, we are equally convinced that his action was a serious violation of Rule 43(a). The Supreme Court has clearly prescribed the procedures mandated by the Rule in the context of questions emanating from the jury room: "Cases interpreting [Rule 43(a)] make it clear, if our decisions prior to the promulgation of the Rule left any doubt, that the jury's [question] should have been answered *in open court* and that [defendants'] counsel should have been given an *opportunity to be heard* before the trial judge responded." *Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975) (Burger, C. J.) (emphasis added).[1] Although this brief reference to the *Rogers* opinion is perhaps sufficient to reveal the error inherent in the trial court's conduct, we feel constrained to emphasize our condemnation of this practice.

Two important interests are undermined by private discourse between judge and ·jury during deliberations. First, it gives rise to "Star Chamber" implications which detract from the appearance of justice. Second, it absolutely precludes the parties from making a record as to the context in which the judge's remarks were made, thereby thwarting appellate review; the parties and this court must remain forever in the dark as to the judge's tone of voice and physical demeanor while he was in the jury room. An additional concern implicat-

---

**1.** In the absence of a clear waiver by the defendant personally, we feel that the district courts in this Circuit should make every effort to observe the procedures endorsed in the *Rogers* opinion.

ed in this particular case is the risk that the judge will be drawn into an extended discourse with the jury, thereby disturbing the delicate balance of legal principles set forth in the original instructions. Although we find it unnecessary to consider whether the judge's statements in the jury room, standing alone, would constitute a sound definition of an "overt act," we are concerned that the discussion of the overt act requirement may have diverted the jury's attention from other essential elements of the conspiracy offense. In a recent appeal from a civil jury trial, the United States Court of Appeals for the Third Circuit stressed that when a supplemental instruction is given,

> trial courts should avoid prejudicial emphasis on part of the case by carefully reminding the jury of other aspects of the original charge and cautioning them that the segment of the charge which is amplified or explained should be considered in the light of the other instructions and is not to be given undue weight.

*Beardshall v. Minuteman Press International, Inc.*, 664 F.2d 23, 29 (3d Cir. 1981).

▮ In some circumstances a violation of Rule 43(a) may be harmless error. *Rogers, supra,* 422 U.S. at 40, 95 S.Ct. at 2095. However, in the factual context of this case, and considering the extended nature of the discussion between the court and the jury, we are unable to say that the defendants were not prejudiced by the error of the court. We reverse the convictions of both defendants as to the conspiracy count (count 1) and remand for further proceedings if the government desires to pursue this count.[2]

On the other hand, we reject defendants' argument that the discussion in the jury room deprived them of a fair trial altogether, thus mandating reversal of all counts of which they were convicted. The jury was selective in its approach to the case, and did not convict the defendants on all the counts charged. The nature of the verdicts that were returned in this case makes it clear that the jury separately analyzed the law and the evidence applicable to each count. Moreover, it should be evident from our analysis of the implications of the contact between judge and jury that the potential prejudice, if any, relates exclusively to the jury's disposition of the conspiracy count. There is no basis for concluding that the jury's disposition of the other counts in the indictment might have been influenced in any manner by a discussion which was confined by its terms to an issue relating exclusively to the conspiracy count.

### III

The trial court gave the following instruction concerning the issue of defendants' knowledge:

> When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of this conduct and did not act through ignorance, mistake or accident. Knowledge may be proven by [the] defendant's conduct and by all the facts and circumstances surrounding the case. *No person can intentionally avoid knowledge by closing his eyes to facts which should prompt him to investigate.*

(emphasis added). The final sentence of the instruction, which we render in italics, was the subject of a timely defense objection at trial. Having preserved their objection, defendants argue on appeal that the sentence violates the rule in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and that it permits a jury to find criminal culpability on the basis of mere negligence. We reject both contentions.

---

**2.** Defendants' alternative challenges to their convictions on the conspiracy count are entirely without merit. The illegal scheme in this case was clearly a corrupt "enterprise" within the meaning of 18 U.S.C. § 1961(4), even though it involved a public entity. *See United States v. Lee Stoller Enterprises, Inc.*, 652 F.2d 1313 (7th Cir.) (en banc), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981). We also find no improper variance between the conspiracy charged in the indictment and the evidence adduced at trial.

Although we have approved the challenged sentence several times in the past, *e.g., United States v. Gabriel,* 597 F.2d 95, 100 (7th Cir.), *cert. denied,* 444 U.S. 858, 100 S.Ct. 120, 62 L.Ed.2d 78 (1979); *United States v. Prewitt,* 553 F.2d 1082, 1087 (7th Cir.), *cert. denied,* 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 104 (1977); *United States v. Joyce,* 499 F.2d 9, 23 (7th Cir.), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); this appears to be the first occasion this court has had to reevaluate it in light of the Supreme Court's decision in *Sandstrom v. Montana, supra.* In a case in which intent was an essential element of the crime charged, the *Sandstrom* decision held that the instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts," violated the requirement that the government prove every element of the offense beyond a reasonable doubt.

The general inquiry in *Sandstrom* was whether the language of the challenged sentence was such that the jury *could* have interpreted the instruction in a way that would impermissibly "reliev[e] the State of the burden of proof ... on the critical question of [the defendant's] state of mind." 442 U.S. at 521, 99 S.Ct. at 2457. The *Sandstrom* analysis condemns instructions which could be interpreted as imposing conclusive presumptions of intent or rebuttable presumptions which shift to the defendant the burden of persuasion concerning the mental element. *See id.* at 522–23, 99 S.Ct. at 2458. On the other hand, *Sandstrom* does not necessarily condemn an instruction which merely describes a rationally-based permissive inference: for example, one that allows but does not require the jury to infer knowledge from a defendant's exposure to information capable of engendering the knowledge. *See* 442 U.S. at 514, 99 S.Ct. at 2454; *id.* at 527, 99 S.Ct. at 2460 (Rehnquist, J., concurring).

Analysis of the challenged sentence in the context of the "knowledge" instruction as a whole shows that it merely operates as an illustration of a rational permissive inference. The notion that no person can intentionally avoid knowledge is little more than a truism. This part of the sentence simply says that once the defendant has received *and comprehended* a message he is powerless to banish it from his mind. The remainder of the sentence illustrates how the cognitive process operates. Since this part of the sentence refers to "facts which should prompt [*the defendant*] to investigate," it advances the idea that one's ability to acquire knowledge depends upon the strength of the message and one's subjective capacity to comprehend it. Moreover, the challenged sentence follows immediately after the sentence which apprises the jury that knowledge *may* be inferred from salient facts and circumstances. In such a context, it functions as an illustration of how knowledge may be inferred from a defendant's exposure to information. Finally, the sentence challenged in this case is not expressly labeled as a legal presumption, whereas the jury in *Sandstrom* had been instructed that *the law* presumes a person intends the ordinary consequences of his voluntary acts. Since the sentence lacks the express mandate of a legal presumption and follows immediately after a statement that knowledge "may be proved" by circumstantial evidence, we are satisfied that no juror could have understood it to impose a presumption of the ultimate fact of knowledge upon proof of an elemental fact of exposure to information. We also note that the *Sandstrom* holding was buttressed by the fact that "[t]he standard reference work for federal instructions, 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions 405 (3d ed. 1977) describes the instruction [in *Sandstrom*] ... as constituting 'reversible error' ...." 442 U.S. at 514 n.3, 99 S.Ct. at 2454 n.3. Even in the aftermath of *Sandstrom,* the "standard reference work" does not attach such a label to the instruction challenged in this case. *See* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 14.09 (3d ed. 1977 & Supp.1981). It harbors none of the prejudicial ambiguities condemned in *Sandstrom.*

We are also satisfied that the sentence does not allow a jury to find criminal culpa-

bility on the basis of negligence. *See United States v. Johnson,* 515 F.2d 730, 732–33 n.7 (7th Cir. 1975); *United States v. Grizaffi,* 471 F.2d 69, 75 (7th Cir. 1972), *cert. denied,* 411 U.S. 964, 93 S.Ct. 2141, 36 L.Ed.2d 684 (1973). The analytical process it contemplates is triggered only upon proof of *intentional* avoidance of knowledge, and it speaks in terms of information which should require the defendant *himself* (and not a reasonable person) to investigate. The sentence calls for a subjective inquiry, rather than an objective one.

■ While the accepted instruction regarding the intentional avoidance of knowledge may be somewhat opaque,[3] we hold that it is consistent with due process. It does not permit any interpretation that would have the effect of relieving the government of its burden of proving the requisite mental element beyond a reasonable doubt.

### IV

Since it is at least possible that the fines and sentences on the other counts were influenced by the fact that the jury found defendants guilty on count 1, we remand for resentencing. Whether the sentences and fines on the remaining counts shall remain the same or be reduced is entirely a matter for the trial judge and we express no view on this question.

Defendant Burns' convictions on counts 22, 23, 25, 27, 28, 29 and 31 and defendant Kelly's convictions on counts 32, 33, 34, 35, 36, 37, 38, 39, 40, 41 and 90 are affirmed. Their convictions, fines and sentences on count 1 are reversed and remanded and the case is remanded for resentencing on all the other counts on which they were convicted.

AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.

---

**3.** The United States Court of Appeals for the First Circuit recently referred to an analogous "willful blindness" instruction as "admittedly unusual" but held that it was not an erroneous charge under the facts of the case. *United States v. Ciampaglia,* 628 F.2d 632, 643 (1st Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980).