UNITED STATES of America,
Plaintiff-Appellee,

v.

William GOLDSTEIN,
Defendant-Appellant.

No. 81–2556.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1982.

Decided July 29, 1982.

Rehearing Denied Aug. 31, 1982.

Stanley P. Gimbel, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for defendant-appellant.

Terry G. Harn, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, GIBSON,* Senior Circuit Judge, and CUDAHY, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

William Goldstein appeals his conviction on one count of a three-count indictment charging him with tax evasion in violation of 26 U.S.C. § 7201 (1976). He was acquitted on charges of tax evasion for the tax years 1974 and 1975, but was convicted for the tax year 1976. The district court imposed a $10,000 fine and a five-year sentence, and ordered that the sentence be suspended after sixty days' confinement in jail, with a three-year probation.

Goldstein raises three points on appeal. The first is that the Government's use of the "net worth method" to show unreported taxable income was insufficient to support a conviction for 1976 because the Government did not establish an opening net worth for 1976 with reasonable certainty.

The second point is that the jury instructions were improper, particularly in allowing the jury to return a conviction without the Government's establishing with reasonable certainty an opening net worth for 1976. The third is that a supplemental instruction regarding the Government's need to prove the source of Goldstein's income was prejudicial.

## I.

The Government used the net worth method to show Goldstein's income for the years in question. This method was described by the Supreme Court in *Holland v. United States*, 348 U.S. 121, 125, 75 S.Ct. 127, 130, 99 L.Ed. 150 (1954):

> In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an "opening net worth" or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income.

Goldstein concedes that the Government's proof established that between 1972 and 1976 he increased his net worth by an amount greater than that reflected in his taxable income according to his tax returns. Appellant's Reply Brief at 2. But Goldstein argues that the Government had to establish an opening net worth for the beginning of each tax year in question, and that it

---

* Hon. Floyd R. Gibson, Senior U. S. Circuit Judge, United States Court of Appeals for the    Eighth Circuit, sitting by designation.

failed to do so because it did not establish with reasonable certainty one element of net worth, cash on hand. Goldstein also argues that the Government did not adequately exclude the possibility of nontaxable sources of income, such as an inheritance he said he and his wife received in April 1973.

### A.

■ In the instant case we need not decide whether the Government adequately established an opening net worth for each tax year because Goldstein was convicted of tax evasion in only one of those years. The question is whether the evidence adduced with the net worth method supported Goldstein's conviction for tax evasion in 1976. The Government had to establish an opening net worth for 1976 because Goldstein was charged with and convicted of tax evasion specifically in 1976. The Government presented evidence that Goldstein's net worth was—$5,688 on January 1, 1973, and $179,306 on December 31, 1976, an increase of $184,994. The Government also estimated net worth for the beginning of each tax year, including 1976. The Government estimated that Goldstein's net worth went from $114,385 to $179,306 in 1976, an increase of $64,921. The Government's opening net worth estimate for 1976 included $100 for cash on hand. Goldstein suggests that the opening net worth estimate is not reasonably certain because it underestimated Goldstein's cash on hand. We conclude that the evidence was sufficient to establish the 1976 opening net worth with reasonable certainty and that Goldstein's suggestion of a cash hoard did not have to be believed by the jury.

■ The Government adequately showed an increase in Goldstein's net worth in 1976. The evidence of Goldstein's increase in net worth from January 1, 1973, to the end of 1976 was relevant to proving an increase in net worth in 1976. The Government can show a 1976 opening net worth by establishing a net worth in an earlier year and then calculating the effect of income and disbursements. *United States v. Scott*, 660 F.2d 1145, 1149 (7th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982); *United States v. Marshall*, 557 F.2d 527, 530 (5th Cir. 1977). Therefore, after the Government established the beginning net worth, it did not have to establish cash on hand at the beginning of each year with evidence independent of the other years. Cash on hand in a net worth calculation is only one of several and varied financial assets and is of no greater significance, aside from its liquidity, than other assets. The Government's calculations of income and disbursements based on a starting point were adequate to prove the opening net worth for 1976.[1]

1. Government Exhibit 121 is as follows:

William & Charmaine Goldstein
Net Worth Statement
1973 through 1976

| | 1973 | 1974 | 1975 | 1976 |
|---|---|---|---|---|
| Assets | | | | |
| Cash on hand | 100. | 237. | 100. | 297. |
| Bank balances | 5913. | 11132. | (4784.) | 8400. |
| Stocks and Bonds | 11795. | 18791. | 17086. | 40394. |
| Loans Receivable | | | 11000. | |
| Tax Shelter Investment | | | 7000. | 17000. |
| Personal Residence | | | 72294. | 95484. |
| Autos | 9841. | 8345. | 15214. | 15214. |
| Yard Machinery | | | | 391. |
| Furniture and Fixtures | 3579. | 4323. | 8161. | 20643. |
| Jewelry | | | 404. | 498. |
| Total Assets | 31228. | 42828. | 126475. | 198321. |
| Liabilities: | | | | |
| Notes Payable | 9449. | 6859. | 2534. | 1064. |
| Accounts Payable | None | None | 9556. | 17951. |
| Total Liabilities | 9449. | 6859. | 12090. | 19015. |

Furthermore, Goldstein's own admissions, in the form of financial statements, indicate that he did not have a cash hoard in the years in question. For instance, in January 1972 he told the Internal Revenue Service he had a net worth of—$46,000. In May 1975, he told a Peoria, Illinois, bank that he had cash on hand of $9,200. In October 1976 he told another Peoria bank that he had cash on hand of only $4,500. There was more than enough evidence to support an increase in net worth in 1976 substantially greater than Goldstein's reported income.

### B.

■ Goldstein also argues that a net worth increase did not show tax evasion because the Government did not exclude nontaxable sources of income. Specifically, he suggests that the net worth increase was attributable to a $130,000 cash inheritance that he and his wife received from his mother-in-law in April 1973.

There was not a probated will or other record of any inheritance, and the testimony of the inheritance came from Goldstein's relatives. The jury was under no duty to accord face value to this self-serving, undocumented testimony.

■ Further, even if Goldstein had a cash hoard from this inheritance, Goldstein's financial statements with the Peoria banks indicate that most of this claimed inheritance was expended before 1976. According to Goldstein's May 1975 financial statement, he had a cash hoard of only $9,200. This was not enough to account for Goldstein's increase in net worth in 1976. Finally, Goldstein argues that the Government did not fulfill its obligation to investigate and negate reasonable explanations of nontaxable sources of income. *See Holland*, 348 U.S. at 135–36, 75 S.Ct. at 135; *United States v. Mackey*, 345 F.2d 499, 506 (7th

Cir.), *cert. denied*, 382 U.S. 824, 86 S.Ct. 54, 15 L.Ed.2d 69 (1965). The steps the Government took, including interviewing Goldstein's relatives, fulfilled its obligation. The Government does not have to negate every possible nontaxable source of income. *Scott*, 660 F.2d at 1161. Information on nontaxable income should be supplied by the taxpayer. The only suggestion here was the claimed but undocumented inheritance.

### II.

Goldstein's second argument is that the jury instructions were erroneous, particularly in their failure to make clear that the Government had to establish an opening net worth for each year. Specifically, he argues that the district court erred in (1) not giving a proposed instruction which emphasized the Government's duty to establish cash on hand at the beginning of each year, (2) delivering instructions which used the plural "years," thereby suggesting that opening net worth need be established only for the series of years, not each year, (3) delivering an instruction that compared net worth in 1974 with the net worth in the years 1974, 1975, and 1976, also suggesting that an opening net worth for each year was unnecessary, and (4) saying that illegal income is taxable, thereby prejudicing Goldstein.

■ When reviewing jury instructions, we must consider them in their entirety and not in "artificial isolation." *United States v. Baskes*, 649 F.2d 471, 479 (7th Cir. 1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1706, 68 L.Ed.2d 201 (1981). Assuming for the sake of argument that Goldstein is correct in saying that some of the instructions could be called misleading, the instructions were clear when viewed in context. For

| | 1973 | 1974 | 1975 | 1976 |
|---|---|---|---|---|
| Net Worth December 31 | 21779. | 35969. | 114385. | 179306. |
| Net Worth Beginning of Year | (5688.) | 21779. | 35969. | 114385. |
| Increase for Year | 27467. | 14190. | 78416. | 64921. |

instance, the court said in Instruction No. 12, "[T]he evidence in the case must establish beyond a reasonable doubt that the defendant's assets at the beginning of the year, plus his reported income for the taxable year do not add up to an amount sufficient to account for the increases in his net worth, plus his non-deductible expenditures during that year." Trial Transcript at 812. When the entire instructions are reviewed, they are not misleading.

■ The court also acted properly in delivering the instruction on the taxability of illegal income. There was testimony that Goldstein engaged in illegal gambling during the years in question. Furthermore, the court minimized any possible prejudice by instructing the jury that Goldstein was not on trial for anything not alleged in the indictment. Trial Transcript at 819. Therefore, we find no prejudicial error in the instructions.

### III.

Goldstein's final argument is that he was prejudiced by a supplemental instruction. The instruction came in response to an inquiry from the jury: "Does the Government have to prove where the questionable source of income came from, or what does the Government have to prove?" The court answered:

> A short answer to the first part of the question is "No"; but the second part of the question is important also, and I think it requires that I read to you the essential elements which the Government does have to prove and also under instructions on the net worth method which by its nature does not specify source.

Trial Transcript at 834. The court then proceeded to reread some of the instructions.

### A.

There are two aspects to Goldstein's complaint about the supplemental instruction. The first is that the repeated instructions included some of those he objected to originally. However, they also included Instruction No. 12, which, as stated above, clarifies any ambiguity as to the Government's burden.

### B.

■ Goldstein also argues that the court's answer was incomplete when it responded "No" to the question of whether the Government had to prove the source of the income. Goldstein suggests that the court should have said, "No, if and only if the Government has proved beyond a reasonable doubt that all nontaxable sources of income have been negated." We do not consider the court's response improper or prejudicial.

First, the court's "short answer" was semantically correct. The Government could win its case without even introducing evidence of a likely source of income, much less proving it beyond a reasonable doubt. The Supreme Court held in a post-*Holland* case that proof of a likely source is not necessary in every case. *United States v. Massei*, 355 U.S. 595, 595, 78 S.Ct. 495, 495, 2 L.Ed.2d 517 (1958). Proving a likely source of the income is merely one of the ways that the Government can prove that the increased net worth resulted from taxable sources. It does not seem apparent to us how a "No" answer to the jury's question would ordinarily imply that the Government also had no duty to negate nontaxable sources, where reasonable information or leads were supplied to the Government.

■ Nevertheless, in the instant case a simple "No" answer only answered the first part of the question, and the second part of the jury's question indicated that it was confused as to the Government's burden in general. Therefore, the district court properly repeated some of the instructions, including those on the Government's burden. The court explicitly stated: "The burden is always upon the prosecution to establish beyond a reasonable doubt that any amounts reflected in the defendant's increased net worth, plus non-deductible expenditures, were from taxable, rather than nontaxable sources." Trial Transcript at 838. The court also stated:

[I]f the evidence in the case also establishes beyond a reasonable doubt that the defendant had one or more possible sources of taxable income, and that the receipts did not come from non-taxable income, then the jury may draw the further inference and find that such receipts constituted taxable income to the defendant.

*Id.* at 837. When we read these statements and the entire response to the jury's question, *id.* at 834–41, we cannot believe the jury would have understood that the Government neither had to prove a likely source of the income nor had to negate reasonable nontaxable sources. Therefore we find no prejudicial error in the supplemental instructions.

Goldstein also raises other issues as to the admissibility of certain evidence. We have considered these issues and find them without merit, particularly in light of our disposition of the other issues in this case.

The judgment of the district court is affirmed.

### Petition for Rehearing of Defendant-Appellant.

IT IS ORDERED that said petition is hereby DENIED. Petitioner argues that the district court committed reversible error by giving supplemental instructions to the jury without first allowing defense counsel to be heard, in contravention of Federal Rule of Criminal Procedure 43(a), *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975), and *United States v. Burns*, 7th Cir., 683 F.2d 1056 (1982). Petitioner did not raise this argument before and therefore we need not consider it. *United States v. Gordon*, 253 F.2d 177, 184 (7th Cir. 1958). Nevertheless, petitioner's claim is without merit. *Rogers* makes clear that failure to allow counsel to be heard before answering the jury's question can be harmless error. 422 U.S. at 40, 95 S.Ct. at 2095. In the instant case defense counsel was given an opportunity to object immediately after the supplemental instruction was given. The court determined that its supplemental instruction was proper, a conclusion with which we agreed as explained in the opinion of the court. At 183–184.

Petitioner's other argument in the petition for rehearing is also without merit and is addressed at pages 182–183 of the court's opinion.