[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-12287
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 25, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-80028-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC INNES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 25, 2008)**

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

A jury convicted Eric Innes of three counts of tax evasion, for which he is

serving three concurrent thirty-seven month sentences.  He now argues the trial court committed instructional error.  We affirm.

## I.

Innes, a chiropractor, did not file federal income tax returns for 1992 through 1999.  The three violations of 26 U.S.C. § 7201 with which he was charged were evasion of assessment for tax year 1998, evasion of assessment for tax year 1999, and evasion of payment for tax years 1992-1995.[1]  Innes admitted that he did not pay taxes or file returns for these years, but argued that he did not do so willfully.

Innes owned the clinic where he practiced, the Tequesta Family Chiropractic Clinic.  In 1996, Innes established a wholly-owned company called Natural Balance Chiropractic Corporation to own and operate the clinic.  Natural Balance never filed tax returns, state or federal, of any sort.  Innes also established a bank account for Natural Balance in 1996, and payment for professional services rendered by Innes was made to Natural Balance.  His office assistant, Eleanor Wasser, kept records concerning patient visits and payments.

Beginning in 1992, Innes also worked as a distributor for Amazon Herb Company, for which he received sales commissions.  The distribution contract with

---

[1] As the Supreme Court has explained, 26 U.S.C. § 7201 may be violated by evading assessment or evading payment of taxes.  Sansone v. United States, 380 U.S. 343, 354 (1965).

2

Amazon Herb was originally in Innes's name. Innes assigned the rights under the Amazon Herb contract to Natural Balance in 1996; the rights were subsequently assigned to Innes's daughter Kathryn in January 1999, then re-assigned from Kathryn to Natural Balance in 2001. Natural Balance transferred the contract rights to Erica Innes, another daughter, in February 2004, once the criminal investigation of Eric Innes was underway.[2] Once Natural Balance was established, Innes's commissions from Amazon were deposited in the Natural Balance account.

Once Natural Balance was established in 1996, Innes frequently paid personal expenses from its account. At first, he simply wrote checks from the Natural Balance account to his creditors. After Innes was audited and levied upon, as explained below, he became more surreptitious. Thereafter, he caused Natural Balance to write checks payable to cash, or to his wife, who cashed the checks; Innes then used the cash to pay personal expenses. In addition to his use of cash, Innes also sought to avoid creating a paper trail by purchasing money orders or cashiers' checks to pay personal expenses. When the bank informed him that money orders over $3,000 were subject to heightened recordkeeping requirements, he thereafter "structured" his money order purchases by purchasing multiple money orders, each of less than $3,000.

---

[2] Kathryn and Erica Innes have not been accused of any wrongdoing.

In 1997, the IRS began a civil audit of Innes for tax years 1992 through 1995. The audit determined that Innes owed about $50,000 in back taxes. As of a December 28, 1998 formal assessment, Innes's liability to the government was about $120,000 (including interest and penalties). The IRS then notified Innes that it would levy his property; soon thereafter, Innes began taking steps to hide his income, including writing Natural Balance checks to cash rather than directly to his creditors, and transferring the Amazon distributorship to Kathryn.

After the initial assessment, the IRS continued to investigate Natural Balance concerning tax years 1996 through 1999. As part of its investigation, IRS agents sought to obtain financial records of Natural Balance. First, as part of a civil audit, agents visited the chiropractic clinic on October 31, 2001, to serve a summons on Innes requiring him to produce records of Natural Balance for 1997 - 1999. Innes was not present at his office when the agents arrived, but Wasser telephoned Innes in the agents' presence to notify him of the summons. Later, Innes and his attorney appeared in response to the summons and stated that Natural Balance had no responsive records. IRS agents visited the chiropractic office December 6, 2001, and saw in plain view physical copies of patients' payment records, which were responsive to the summons. After being made aware of the agents' visit, Innes removed those records from his office to his home. In January

4

2004, once Innes was under criminal investigation, the grand jury subpoenaed all Natural Balance's financial records from 1996 going forward. In response, Innes telephoned the United States Attorney's office and left a message saying that he had no responsive records beyond those already in the government's possession. IRS agents later executed a search warrant of Innes's home in February 2004 and recovered many records that were responsive to both the civil summons and the grand jury subpoena, including patients' payment records and Natural Balance deposit slips, as well as cash, bank teller checks, and a book about hiding assets.

At trial, the IRS agents testified, based on bank records and patient payment records obtained via the search, that Innes owed individual income taxes of approximately $30,095 for 1998 and approximately $9,371 for 1999. The civil assessment had established his tax liability for 1992-95. The government offered direct proof of Innes's income by showing that he received payments from patients, received commissions, and made cash expenditures on personal expenses. Innes did not contest that he had substantial tax liability for each of the tax years in question.

Through a patient, Innes was introduced to a tax-protestor group in 1991, which deluded him into believing that payment of taxes was voluntary – hence his failure to file returns. While Innes was being audited, he (and persons holding his

power of attorney) wrote various correspondence to the IRS questioning its authority to issue third-party summonses and arguing that Innes had no duty to pay taxes. The agent in charge described these letters as "pro forma tax protestor correspondence." The agent testified that he may have responded to some correspondence with a form letter stating that Innes's arguments were frivolous and had been uniformly rejected by courts. Other protest letters from Innes were ignored, consistent with IRS policy.

Innes testified in his own defense at trial. He stated that prior to 1992 he had paid taxes because he thought he was required to do so, but that during the tax years at issue, he became involved in a tax protest group, undertook a diligent study of the tax laws, and sincerely concluded that payment of taxes was optional. Innes now admits that this belief was erroneous, but he maintained at trial that it was sincerely held – a conclusion which, if accepted by the jury, would have been a defense.[3]

## III.

Innes argues that the district court gave two erroneous jury instructions and

---

[3] A defendant who believes in good faith that he has no duty to pay taxes lacks the requisite criminal intent for tax evasion, no matter how unreasonable the belief, because the statutory "willfulness" element requires proof of an intentional violation of a known legal duty. See United States v. Cheek, 498 U.S. 192 (1991). The jury was instructed on this good faith defense. It was also instructed that it could consider the reasonableness of a defendant's belief that he had no duty to pay income taxes in determining whether that belief was sincerely held.

erred by failing to give two other instructions. We review de novo an instruction which was given to determine whether it misstates the law or misleads the jury, but if an instruction states the law accurately, a district court has discretion to determine its precise wording. United States v. Browne, 505 F.3d 1229, 1267 (11th Cir. 2007) (citations omitted). When a district court rejects a proposed jury instruction, we review its decision for abuse of discretion, and we will reverse only where the proposed instruction correctly stated the law, the actual charge did not cover the proposed instruction, and the defendant's ability to present his defense was substantially impaired. United States v. Palma, 511 F.3d 1311, 1314-15 (11th Cir. 2008) (citations omitted). But where a defendant challenges the failure to give, sua sponte, an instruction he did not request, we will reverse only where the district court's alleged oversight amounts to plain error. Fed. R. Crim. P. 52(b); see also, e.g., United States v. Knowles, 66 F.3d 1146, 1157 (11th Cir. 1995). This standard requires a showing of (i) error which is (ii) plain and (iii) affects substantial rights; further, we will notice and correct such an error only where it seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Straub, 508 F.3d 1003, 1008 (11th Cir. 2007) (citations omitted). To show an effect on substantial rights, a defendant must prove a reasonable probability of a different result but for the forfeited error. United States v.

Kennard, 472 F.3d 851, 858 (11th Cir. 2006) (citation omitted).

First, Innes argues the court erred in failing to instruct the jury about the government's method of calculating his taxable income. Although no such instruction was requested at trial, Innes argues that United States v. Carter, 721 F.2d 1514 (11th Cir. 1984) and Holland v. United States, 348 U.S. 121 (1954), establish that it is plain error in a criminal tax case for a trial court to fail to give an instruction explaining the government's method of calculating the tax deficiency.[4] This argument is unpersuasive. Carter and Holland both involved indirect proof of a tax deficiency. See Carter, 721 F.2d at 1538. Although there are several methods of indirect proof – the bank deposits method, the cash expenditures method, and the net worth method – a feature common to all of them is the presence of numerous computational steps and working assumptions by revenue agents.[5] Thus, indirect methods of proving a tax deficiency are complicated and likely to confuse

_____

[4] The existence of a tax deficiency is an element of tax evasion, 26 U.S.C. § 7201, along with willfulness and an affirmative act of evasion or attempted evasion. United States v. Kaiser, 893 F.2d 1300, 1305 (11th Cir. 1990) (citation omitted).

[5] The working assumptions and computational steps required by the various methods of indirect proof are summarized elsewhere. See United States v. Harvey, 869 F.2d 1439, 1442 n.5 (11th Cir. 1989) (net worth method); United States v. Marshall, 557 F.2d 527, 529 (5th Cir. 1977) (expenditures method); United States v. Boulet, 577 F.2d 1165, 1167 (5th Cir. 1978) (bank deposits method). The critical point is that under all three methods, the government invites the inference that income was from taxable sources by attempting to negate potential non-taxable sources, rather than directly prove a taxable source. Of course, decisions of the former Fifth Circuit rendered on or prior to September 30, 1981, are part of the law of this Circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

8

the jury, possibly to the defendant's detriment, if not adequately explained. Not so with the direct method of proof used here: the government simply offered direct evidence that Innes received payments from his patients and commissions from the herb sales, both of which are taxable sources of income. The fact that the government also used bank records as proof of taxable income does not convert this into a bank deposits method case, as the government proved the precise origin of the deposited funds, namely, commissions and fees for services. Cf. United States v. Penosi, 452 F.2d 217, 219 (5th Cir. 1971). In other words, the jury was not asked to infer that the income was from a taxable source, because the government presented direct, affirmative evidence on this point; that makes this a direct proof case rather than a bank deposits case. Once the income sources and amounts were proved, the government's witnesses merely added and summarized the figures for the jury. There is little possibility of confusion here.

Accordingly, while Carter and Holland establish that failure to instruct the jury concerning the government's calculation of taxable income is plain error in a circumstantial proof case, we have never held that such an instruction is required at all in a direct proof case, let alone that it is plain error not to give one. And given the important differences between direct and indirect proof of a tax deficiency, we will not extend Carter and Holland to require a district court to sua sponte instruct

9

a jury on the government's computation method in a tax evasion case where the tax deficiency is proven directly.

Second, Innes argues that the district court plainly erred by failing to instruct the jury sua sponte that the affirmative act of evasion for each § 7201 count must be tied to the tax year or years at issue in that count. But the jury was instructed that each count concerned a particular tax year or assessment period, and that the affirmative act for each count must be in furtherance of the evasion or attempted evasion. Read as a whole, the jury instructions adequately conveyed the law concerning the affirmative act element. Moreover, even assuming the instructions were in error on this point, there was no effect on Innes's substantial rights because of the overwhelming evidence that Innes committed numerous affirmative acts of evasion with respect to each count. Indeed, at trial Innes did not contest the government's evidence that he committed the charged acts of evasion, arguing instead that he lacked criminal intent. There is no reasonable probability of a different outcome had the instruction been more specific.

Next, Innes challenges the good faith instruction given by the district court. As the Supreme Court has made clear, a good faith belief that one need not pay taxes negates willfulness, even if the belief is unreasonable. Cheek, 498 U.S. at 203-04. However, the jury may consider the reasonableness of such a belief in

10

determining whether it is held sincerely and in good faith. Id. Innes argues that the good faith instruction unfairly focused the jury's attention on the reasonableness of his beliefs, and diverted its attention from the other circumstances that, he argues, evince his good faith – such as his personal study of the tax laws and his correspondence with the agents auditing him. In effect, Innes's argument is that the trial court violated the rule that "a defendant is entitled to a charge which precisely and specifically, rather than merely generally or abstractly, points to the theory of his defense." United States v. Morris, 20 F.3d 1111, 1117 (11th Cir. 1994) (citation omitted).

Our review of the willfulness and good faith instructions confirms that they are both legally accurate and fairly convey Innes's theory of the case. The jury was specifically instructed that a good faith belief need not be reasonable to be a defense, although reasonableness could bear on whether a belief was held in good faith, and that the burden of proving willfulness never shifted from the government. Moreover, the district judge specifically instructed the jury that a defendant's personal research efforts could result in an unreasonable but sincere belief that he had no duty to pay taxes. Thus, the jury was instructed on Innes's precise theory of the case. Nor do the instructions erroneously convey that the reasonableness of a belief is the only circumstance bearing on whether it was held

in good faith; the mention of personal research efforts conveyed that other circumstances were relevant. No error has been shown.

Finally, Innes argues that the district court erred by instructing the jury that the IRS's failure to respond to his legal questions did not relieve him of his duty to pay taxes. Once deliberations began, the jury made two inquiries of the court: (i) "what is the IRS's responsibility to answer legal questions?" and (ii) "would the IRS response to invite and agree to respond to one taxpayer's legal questions but not another legal question be prejudicial to that party?" The district court clarified to the jury (i) that the IRS may respond to taxpayer inquiries, but its failure to do so does not absolve the taxpayer of responsibility for paying taxes, and (ii) that the questions Innes posed to the IRS were relevant only to willfulness.

Innes argues that these responses are correct but misleading. This is because Innes testified that he believed that the IRS's refusal to answer his inquiries demonstrated that the agents implicitly endorsed his beliefs – hence negating willfulness. Innes argues that the district court's response to the first question may have confused the jury, leading it to disregard as irrelevant his testimony that he thought the IRS implicitly agreed with the positions in his letters. But even assuming there was potential for confusion from the district judge's response to the first question, we believe his second response adequately clarified that the jury

12

could consider Innes's correspondence with the IRS, and its failure to respond, in determining if Innes acted willfully. We discern no reversible error here.

In sum, no instructional error occurred. The judgment is

**AFFIRMED.**