**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank TOULOUMIS,
Defendant-Appellant.**

No. 84–2471.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1985.

Decided Aug. 19, 1985.

As Amended Aug. 26, 1985.

**236**

John T. Theis, Claire Toomey Durkin, Chicago, Ill., for defendant-appellant.

Ruben Castillo, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD and FLAUM, Circuit Judges, and BROWN, Senior District Judge.[*]

FLAUM, Circuit Judge.

This is an appeal from a conviction following a jury trial in which the defendant was found guilty of using extortionate means to collect an extension of credit in violation of 18 U.S.C. § 894 (1982). The defendant argues that there was insufficient evidence produced at trial to prove

[*] The Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, is sitting by designation.

beyond a reasonable doubt that he used or encouraged others to use extortionate means to collect credit. The defendant also alleges various trial errors. For the reasons stated below, we affirm the conviction.

## I.

In August 1983, defendant Frank Touloumis was working at the tavern that he owned in Cicero, Illinois when three men came in to continue playing a dice game that they had started at another bar. The three men included Mike Ingersoll, Valencio "Chachi" Lucio, and Michael Ziemba. After Ziemba had used up all his cash in the game, he began to play on credit. Concerned that Ziemba would be unable to pay off all the money that he was losing, Touloumis called Lucio into his office to suggest that the three men stop playing the game. Touloumis testified that he then told Ziemba that he was going to "back" Lucio for any losses that Lucio might incur and that Ziemba could continue playing on his own credit. Ziemba testified that by the time that the men stopped playing, he had lost $20,000 to Lucio, while Touloumis testified that Ziemba had lost $30,000. Ziemba testified that he gave a check to Lucio from his auto repair garage at the end of the game.

Ziemba testified that Lucio came to his garage the next day and demanded payment of the $20,000 debt. Lucio returned the check that Ziemba had given him the night before, claiming that it was invalid because Ziemba had scribbled Lucio's name in and had crossed off the name of the original payee. The following day, both Touloumis and Lucio went to Ziemba's garage to collect the money. Ziemba testified that this was the first time he realized that Touloumis was Lucio's partner in the dice game. Ziemba related that Touloumis told him that he had lost $30,000 in the game and sought $15,000 for himself and $15,000 for Lucio. Ziemba told the men that he did not have the money. He testified that Touloumis said, "You better raise the mon-

ey." Touloumis testified that he and Lucio did not threaten Ziemba.

Over the next few days, Ziemba gave $30 to Lucio and also made $233.15 worth of repairs on Touloumis's car for which he did not charge Touloumis. Ziemba also testified that he met Touloumis and Lucio at Touloumis's tavern and told Touloumis that he could not raise the money. Touloumis replied that Ziemba had to raise the money.

In November 1983, Touloumis went to Ziemba's garage. Ziemba's brother, Lucio, and a mechanic were present when Touloumis arrived. Ziemba testified that when he told Touloumis that he did not have the money yet, Touloumis hit Ziemba in the face and threw him against the garage wall until his forehead was bleeding and his artificial leg began falling off. Ziemba testified that his brother restrained Touloumis and that Touloumis twice stated to Ziemba, "You're going to pay." According to Touloumis, Ziemba initiated the first contact when he attempted to push Touloumis out of the garage. Following this incident, Lucio received some small payments from Ziemba.

In January 1984, Touloumis asked his girlfriend's uncle, Anthony Palermo, if he would try to get the money from Ziemba. Lucio testified that he warned Palermo that Ziemba was dangerous and carried a gun. On January 23, Palermo and another man went to Ziemba's garage and told Ziemba that they were there to collect the $15,000 owed to Touloumis. Ziemba testified at trial that he told the two men that he did not have the money, and that Palermo said, "If you don't pay, your wife is gonna pay and your kids are gonna pay." Ziemba wrote out three $5,000 checks to Touloumis, but explained that he did not have the $15,000 in his account at that time.

On January 24, 1984, Ziemba met with the F.B.I. and placed a stop payment order on his account. Ziemba began wearing a concealed microphone, so that the F.B.I. could record his conversations with Lucio and Touloumis. One of Touloumis's friends, Peter Malinowski, came to Ziem-

ba's garage on February 2. Malinowski told Ziemba that Touloumis had asked him to collect the gambling debt from Ziemba, but that Malinowski had refused since he had previously been cheated in a dice game with Touloumis and Lucio.

On February 10, 1984, Palermo visited Ziemba's shop several times in order to collect the money. At the end of one of these meetings with Ziemba, Palermo was arrested by the F.B.I. and found to have been armed with a gun. Palermo and Touloumis were charged in an indictment for the use of extortionate means to collect credit, but Palermo pled guilty before Touloumis was even tried. A weapons count in the indictment against Palermo was dismissed. Touloumis was found guilty following a jury trial and was sentenced to eighteen months in the custody of the Attorney General and fined $2,000. On appeal, the defendant claims that there was insufficient evidence to prove him guilty beyond a reasonable doubt and that the following errors occurred at trial: (1) the trial judge allowed the gun found on Palermo to be shown to the jury, (2) the judge allowed Malinowski to testify about his drug collections for Touloumis, (3) the prosecutor misstated the evidence during closing argument, and (4) the judge gave an improper instruction on "knowledge." We will address each of these issues in turn below.

## II.

**A. Sufficiency of the Evidence**

The defendant argues that we should reverse his conviction because there was insufficient evidence produced at trial to prove him guilty beyond a reasonable doubt of the offense of using extortionate means to collect an extension of credit. The defendant claims that his actions in November 1983 when he fought with Ziem-

ba at Ziemba's garage were insufficient to support a conviction, and also that the words and actions of Palermo both were insufficient to support a conviction and were not attributable to the defendant.

■ In reviewing the sufficiency of the evidence produced at a trial, an appellate court must determine whether, taking the view most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Moya,* 721 F.2d 606, 609–10 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984). In order to convict a defendant under 18 U.S.C. § 894, a trier of fact must find that: (1) a collection or attempted collection was made, (2) extortionate means were used, and (3) the defendant knowingly participated in these actions. *United States v. Benedetto,* 558 F.2d 171, 178 (3d Cir.1977).[1] Section 891(7) defines "extortionate means" as any means involving the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person. 18 U.S.C. § 891(7) (1982). In this case, there was sufficient evidence presented to the jury to show that Touloumis had knowingly participated in the use of both actual violence and implicit threats of violence in order to make Ziemba pay his gambling debt of $15,000.

The evidence describing Touloumis's beating of Ziemba at Ziemba's garage in the presence of several witnesses is sufficient in itself to sustain the jury's guilty verdict. Touloumis testified that his actions were merely in response to Ziemba's attempt to push him off his property. In view of our duty to view the evidence in the

---

1. 18 U.S.C. § 894(a) provides:
 Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means
 (1) to collect or attempt to collect any extension of credit, or

(2) to punish any person for the nonrepayment thereof, shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.
18 U.S.C. § 894(a) (1982).

light most favorable to the prosecution and to defer to the credibility determinations made by the jury, we find that a rational juror could have found the essential elements of a section 894 violation beyond a reasonable doubt.

In addition to this evidence of the direct use of violence by Touloumis, the government presented evidence that Touloumis knowingly participated in the use of implicit threats of violence. Malinowski testified that Touloumis had asked him to collect a gambling debt from Ziemba. According to Malinowski, Touloumis suggested that Ziemba needed a "crack" or something to show that Touloumis meant business, offered to give Malinowski his nine-millimeter pistol to collect the debt, and offered to post bond for Malinowski if he was arrested while collecting the debt.

After Malinowski refused to collect the debt, Touloumis solicited Palermo to collect the $15,000. Ziemba testified that on January 23, 1984, Palermo and another person came to his home to collect the debt and told Ziemba that if Touloumis had wanted to have Ziemba's heart and lungs on the table, he could have done so. Ziemba related that when he told them that he did not have the money, Palermo said that if Ziemba did not pay, his family would pay. After this encounter, Palermo met with Lucio and Touloumis. Palermo testified that when Lucio told Touloumis that Palermo had really scared Ziemba, Touloumis smiled and told Palermo to collect only cash from Ziemba.

It is clear from the evidence summarized above that a rational trier of fact could have found that the defendant had used both direct violence and implicit threats of violence through the actions of Palermo in order to collect the $15,000 gambling debt from Ziemba. Thus, we hold that there was sufficient evidence presented at trial to sustain the jury's verdict.

## B. Display of Gun to Jury

The defendant next argues that the trial court erred in denying his motion *in limine* to prevent the government from introducing a .38 caliber revolver into evidence that was found in an ankle holster worn by Palermo when he was arrested by the F.B.I. The defendant argues that the government should not have been able to show the gun to the jury because the gun was never on the defendant's person and was never shown to Ziemba and because Touloumis never told Palermo to carry a gun. The defendant claims that we should grant him a new trial because the introduction of the gun served only to inflame and exploit the passions and fears of the jurors.

Rule 403 of the Federal Rules of Evidence provides that evidence, although relevant, may be excluded by the trial court if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. The phrase "unfair prejudice" has been defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R. Evid. 403 advisory committee note. In ruling on a motion to exclude, the trial judge must attempt to balance the probative value of and the need for the evidence against the harm likely to result from its admission. *Id.* Since an appellate court must give great deference to the trial judge who saw and heard the evidence, we will reverse a determination by a trial judge that the probative value of the proffered evidence outweighs its prejudicial impact only for an abuse of discretion. *United States v. Medina,* 755 F.2d 1269, 1274 (7th Cir. 1985); *United States v. Weston,* 708 F.2d 302, 308 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 397, 78 L.Ed.2d 340 (1983); *United States v. Dennis,* 625 F.2d 782, 796 (8th Cir.1980).

In the present case, Touloumis could have been found guilty of using extortionate means to collect credit either by the direct use of violence in his beating of Ziemba at Ziemba's garage or by the implicit threat of the use of violence through Palermo's actions toward Ziemba. Palermo testified that it was revealed at his meeting with Lucio and Touloumis that he had been successful in scaring Ziemba dur-

ing his first visit to Ziemba's home. At this same meeting, Lucio cautioned Palermo to be careful when he again met with Ziemba because Ziemba carried a gun. A review of the above evidence shows that the admission of the gun was relevant in order to shed light on Palermo's intentions in his effort to collect the gambling debt from Ziemba, since Touloumis had expressly solicited Palermo to collect the debt and could be found guilty of using extortionate means to collect credit through Palermo's actions. In sum, we hold that the trial court's denial of the defense's motion *in limine* to prevent the introduction of the gun into evidence did not constitute an abuse of discretion.

## C. Testimony Suggesting Defendant's Involvement in Drug Transactions

■ The defendant contends that he was denied a fair trial when the trial court allowed Malinowski to testify over objection regarding drug transactions in which Touloumis was allegedly involved. According to the defendant, this testimony was used to prove his character in order to show that he acted in conformity therewith in violation of Rule 404(b) of the Federal Rules of Evidence, and in any event, the testimony's probative value was substantially outweighed by the danger of unfair prejudice to the defendant in violation of Rule 403 of the Federal Rules of Evidence.

Prior to trial, defense counsel made a motion for an order (1) prohibiting Malinowski from referring at trial to cocaine-related debt collections that he said he had made for Touloumis, and (2) for an order deleting the references to these collections that were contained in a February 2, 1984 tape-recorded conversation that Malinowski had had with Ziemba. The prosecution agreed to delete any reference to cocaine transactions from the tape and the transcript and instructed Malinowski to refrain from such references at trial. On direct examination, the prosecution did not make any reference to drug collections, but did elicit testimony concerning the fact that Malinowski had previously collected debts

for Touloumis. On cross-examination, however, defense counsel asked Malinowski the following questions:

Q: Hadn't you collected for Frank Touloumis debts in the past?

A: Yes.

Q: Just so that it's clear, that's money that he had lent to people?

A: Correct.

Q: There was no interest involved in those, correct?

A: No interest.

Q: Frank would lend money to people when they needed it because he had money with his trucks, and he had a little cash?

A: I have no idea why he lent it. I just collected it.

Q: But the point was, this was not a situation where he was collecting interest and you were out there—

A: No, no, it was nothing like that.

Q: You were just asking to talk to people who were ducking him for one reason or another because they owed him money?

A: Not talk. I did more than talk to them.

Q: Well, you went and talked to them, didn't you?

A: Not talk. I did more than talk to them.

Q: Well, you went and talked to them, didn't you?

A: Yes, talk, but it led to more than that if it had to.

Q: And these were no-interest loans that Frank Touloumis, from time to time, would lend people?

A: That's right.

Q: In fact would you say that Frank was a pretty soft touch for money for people out on the street?

Prosecution: Objection, your Honor. Irrelevant.

Court: Sustained.

At the end of this cross-examination, the prosecution requested leave to obtain Malinowski's testimony as to the nature of his collections for Touloumis, claiming that de-

fense counsel had opened the door to such testimony. Defense counsel claimed that he had merely asked the same questions that the prosecution had asked during the grand jury proceedings in which no reference to drug collections was made. The court ruled that defense counsel had opened the door to the drug testimony when he asked Malinowski about the drug collections, knowing of the existence of the tape-recorded conversation concerning these collections. On redirect examination, Malinowski stated that he had collected money for Touloumis concerning cocaine transactions. These drug collections were not referred to again during the trial.

This circuit has held that a trial judge has broad discretion in determining the scope of redirect examination and in assessing the relevancy of proffered testimony. *United States v. Carter,* 720 F.2d 941, 947–48 (7th Cir.1983); *United States v. Mackey,* 571 F.2d 376, 383 n. 9 (7th Cir. 1978); *United States v. Bolin,* 514 F.2d 554, 558–59 (7th Cir.1975). When reviewing a trial court's ruling on the admissibility of evidence, we will reverse that ruling only upon a clear showing that the court abused its discretion. *United States v. Carter,* 720 F.2d at 948. In the present case, we hold that the district court did not abuse its discretion in allowing into evidence Malinowski's testimony concerning his drug collections for Touloumis.

This circuit has held on numerous occasions that when a party questions a witness on a subject, even though that subject may not be strictly relevant to the case, the party cannot complain on appeal if the opposing party subsequently introduces evidence on the same subject. *United States v. Chaimson,* 760 F.2d 798, 810 (7th Cir. 1985); *United States v. Carter,* 720 F.2d at 948; *United States v. Lynch,* 699 F.2d 839, 844 (7th Cir.1982); *United States v. Allain,* 671 F.2d 248, 252–53 (7th Cir.1982); *United States v. Bryza,* 522 F.2d 414, 424–25 (7th Cir.1975), *cert. denied,* 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976); *United States v. Bolin,* 514 F.2d at 558. We have held that when a party elicits testimony as to only part of a transaction during cross-examination, the opposing party is permitted to elicit testimony as to the whole transaction on redirect examination in order to advise the jury fully of all the facts surrounding the case. *United States v. Carter,* 720 F.2d at 948; *United States v. Walker,* 613 F.2d 1349, 1353 (7th Cir.), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2172, 64 L.Ed.2d 800 (1980). We have reasoned that a party cannot be permitted on the one hand to introduce evidence that appears favorable to his argument and then complain, after the circumstances are fully developed, because the evidence becomes detrimental to his cause. *United States v. Carter,* 720 F.2d at 948.

In *United States v. Walker,* 613 F.2d at 1352–53, we held that the trial court did not err in admitting the statement by a witness on redirect examination that she was working for the defendant as a prostitute. We reasoned that defense counsel had opened the door to this testimony when he continued to ask the witness what she did for a living and whether she was involved in drug transactions in an attempt to build a defense for his client that it was this witness and not his client that was selling drugs. *Id.* We reasoned that the government was able to elicit testimony on redirect examination concerning the witness' prostitution since defense counsel had first elicited testimony regarding the defendant's connection with the witness' prostitution and the role that this connection played in the purchase of drugs. *Id.* at 1353.

Similarly, in the present case, defense counsel began to cross-examine Malinowski about his role in collecting debts owed to Touloumis. Defense counsel persistently asked questions designed to suggest that Malinowski was collecting on legitimate no-interest loans that Touloumis had given to "people out on the street" out of the goodness of his heart. In order to counteract this portrait of a generous man offering money to people on the street, the government was entitled to elicit testimony as to why Touloumis was lending money to various people. Thus, we hold that the district

court did not abuse its discretion in admitting this testimony.

## D. Prosecutor's Misstatement of Evidence During Closing Argument

 The defendant also claims that he was denied a fair trial by the prosecutor's misstatement of the evidence on a crucial issue during the rebuttal portion of his closing argument. As the prosecutor was describing a meeting between Touloumis, Lucio, and Palermo on February 6, 1984, he stated that Touloumis told the two men to give Ziemba a "crack." Defense counsel objected, claiming that there had not been any testimony that Touloumis had made that statement at the February 6 meeting. When the prosecutor responded that Touloumis did say that, the trial judge stated that the jury had heard the evidence and that it would make a decision. The prosecutor again said that Touloumis told the men either to give Ziemba a crack or that Ziemba deserves a crack. The prosecutor concluded by saying that, in the context in which Touloumis was using the term "crack," Touloumis was really telling the men to keep up the good work in their attempt to scare Ziemba.

At the end of this argument in the morning, defense counsel moved for a mistrial based on the prosecutor's misstatement of what Touloumis had actually said. The trial judge told the attorneys to review the testimony with the court reporter and to prepare a supplemental instruction if defense counsel was correct as to the testimony. The trial was then recessed, and the jury began its deliberations. At 2:00 p.m., the attorneys met with the judge in chambers, and defense counsel pointed out to the judge that Touloumis had really told the men at the meeting "to keep him completely out of the picture because he was afraid he was going to lose his temper and give Ziemba a crack." Upon learning of this misstatement, the trial judge denied defense counsel's motion for a mistrial and instead prepared his own jury instruction, stating that the prosecutor's recollection of Touloumis's statement on February 6 to

Lucio and Palermo was incorrect. The instruction detailed what Touloumis had actually said.

Before the trial judge could read the instruction to the jury, the jury reached a verdict. The judge then proceeded to enter the jury room before the verdict was announced, told the jury to hold its verdict until it had considered the supplemental instruction, read the instruction to the jury, and told the jury that it could change its verdict. After deliberating for another thirty to forty-five minutes, the jury returned a verdict of guilty.

Before addressing the effect of the prosecutor's misstatement of the evidence on the defendant, we wish to express our disapproval of a trial judge's procedure in entering a jury room, despite agreement by both counsel and the presence of a court reporter, to give a supplemental instruction after the jury had already begun its deliberations. We previously held in *United States v. Burns*, 683 F.2d 1056, 1057 (7th Cir.1982), *cert. denied*, 459 U.S. 1173, 103 S.Ct. 821, 74 L.Ed.2d 1018 (1983), that notwithstanding the presence of a court reporter, a judge should not engage in a discussion with the jury in the jury room regarding the issues presented in the case after the jury has begun its deliberations. We noted that two important interests are undermined by such discourse between the judge and the jury during the jury's deliberations: (1) the appearance of justice, and (2) allowing the parties to make a contemporaneous record as to the context in which the judge's remarks are made. *Id.* at 1058. This exclusive discourse between the judge and the jury also entails the risk that the judge will unintentionally be drawn into an extended discussion with the jury, which may upset the delicate balance of legal principles enumerated in the original instructions. *Id.* at 1058–59. Although we find the trial judge's actions in entering the jury room to be inappropriate at this stage of the trial, we believe that the brief exchange between the judge and the jury was, in any event, harmless, and thus proceed to deal with the prosecutor's misstatement.

The standard applied in this circuit to determine whether a prosecutor's statements mandate reversal is whether the statements were so prejudicial as to deprive the defendant of a fair trial. *United States v. Zylstra,* 713 F.2d 1332, 1339 (7th Cir.), *cert. denied,* ⎯ U.S. ⎯, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983); *United States v. Craig,* 573 F.2d 455, 494–95 (7th Cir. 1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978); *United States v. Phillips,* 527 F.2d 1021, 1021, 1023 (7th Cir.1975). We have noted that this determination must be decided on the unique facts of each case and that one must analyze the allegedly prejudicial remarks in the context of the trial as a whole. *United States v. Zylstra,* 713 F.2d at 1340.

In the present case, we find that the prosecutor's misstatement was not so prejudicial as to deny the defendant a fair trial. First, we note that this misstatement was actually incorrect in the context of what Touloumis said to Lucio and Palermo at the February 6 meeting. However, there was other evidence produced at trial that when Touloumis asked Malinowski to collect Ziemba's debt, he told Malinowski that Ziemba "needed a crack or something to show that [Touloumis] meant business."

Furthermore, we believe that even if the prosecutor's misstatement was improper, it was harmless in the context of the case as a whole since we believe that absent the prosecutor's misstatement of the evidence, it is clear beyond a reasonable doubt that the jury still would have returned a verdict of guilty. *See United States v. Hasting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983); *United States v. McCoy,* 767 F.2d 395, 397–98 (7th Cir.1985). The evidence that Touloumis had beaten up Ziemba at the garage and had solicited Palermo and Malinowski to collect the debt was clearly sufficient to convict Touloumis even excluding the prosecutor's misstatement. Finally, the judge instructed the jury several times regarding the misstatement: (1) at the time of the misstatement, the judge told the jury to decide for itself if the prosecutor's statement was correct,

and (2) prior to the jury's deliberations, the judge said that the jury should disregard arguments not supported by the record. These precautions by the judge, combined with the evidence produced at trial, lead us to the conclusion that the defendant's right to a fair trial was not abridged.

**E. Trial Court's Instruction on the Issue of Knowledge**

█ In instructing the jury on the element of knowledge required under section 894, the trial court gave the government's instruction no. 22, which stated:

> The word "knowingly" as used in the crimes charged means that the act was done voluntarily and purposely, and not because of mistake or accident. Knowledge may be proven by a defendant's conduct, and by all the facts and circumstances surrounding the case.

> No person can intentionally avoid knowledge by closing his eyes to facts which should prompt him to investigate.

The defendant objected to the second paragraph of this instruction, but the court overruled the objection and gave the entire instruction to the jury. On appeal, the defendant claims that the instruction was improper in light of the evidence produced at trial because (1) it allowed the jury to find criminal culpability on the basis of negligence since it presumes that the defendant had an opportunity to investigate, and (2) it constituted a conclusive or rebuttable presumption of intent because it presumes that the defendant intentionally closed his eyes.

Although the second paragraph of the instruction is not included in the Seventh Circuit's recommended instruction on knowledge, *see* Comm. on Federal Criminal Jury Instructions of the Seventh Circuit, Instruction 6.04, at 86 (West 1980), the defendant acknowledges that this paragraph is routinely included in jury instructions in this circuit. In addition, this circuit has upheld the use of the second paragraph

of this instruction in numerous cases. *See United States v. Josefik*, 753 F.2d 585, 589 (7th Cir.1985); *United States v. Petullo*, 709 F.2d 1178, 1181 (7th Cir.1983); *United States v. Burns*, 683 F.2d at 1059–61; *United States v. Gabriel*, 597 F.2d 95, 100 (7th Cir.), *cert. denied*, 444 U.S. 858, 100 S.Ct. 120, 62 L.Ed.2d 78 (1979); *United States v. Muscarella*, 585 F.2d 242, 252 (7th Cir.1978); *United States v. Prewitt*, 553 F.2d 1082, 1087 (7th Cir.), *cert. denied*, 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 104 (1977). This court has held that the challenged paragraph in the context of the knowledge instruction as a whole merely serves as an illustration of a rationally permissive inference, rather than a presumption of an ultimate fact, as to one's knowledge based on exposure to information. *United States v. Burns*, 683 F.2d at 1060. *Burns* further holds that the analytical process that the instruction contemplates is only triggered upon proof of intentional, not negligent, avoidance of knowledge. *Id.* at 1061. Thus, this circuit has concluded that the instruction does not have the effect of relieving the prosecution of its burden of proving the requisite mental element beyond a reasonable doubt, but rather merely permits a jury, when a defendant claims that his actions were not done knowingly or were done without knowledge of the essential facts, to look to the evidence to determine whether there were facts that should have prompted the defendant to investigate. *Id.; United States v. Muscarella*, 585 F.2d at 252.

In the present case, where one of the defendant's principal defenses at trial was that Touloumis was unaware of any extortionate means used by Palermo and where the government submitted evidence suggesting that Touloumis could have discovered the means employed by Palermo to collect the debt, we find that the district court did not abuse its discretion in giving this instruction to the jury.

In conclusion, Touloumis's conviction is affirmed.