UNITED STATES of America,
Plaintiff,

v.

Eddie Leroy ALEXANDER, Defendant.

No. 99–30067.

United States District Court,
S.D. Illinois,
East St. Louis Division.

Aug. 28, 2000.

---

Hal Goldsmith, Fairview Heights, Patty Merkamp Stemler, Washington, DC, for plaintiff.

Herman L. Jimerson, Clayton, MO, for defendant.

## OPINION

RICHARD MILLS, District Judge.

Court proceedings are held for the solemn purpose of endeavoring to ascertain the truth which is the *sine qua non* of a fair trial. Over the centuries Anglo–American courts have devised careful safeguards by rule and otherwise to protect and facilitate the performance of this high function.... We have always held that the atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms—must be maintained at all costs.

*Estes v. Texas*, 381 U.S. 532, 540, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).

## I. BACKGROUND

On August 20, 1999, a jury found Eddie Leroy Alexander guilty of all five Counts of the indictment filed against him.[1] Prior to the sentencing hearing, Alexander's counsel received notification from Chief United States District Judge J. Phil Gilbert that United States District Judge Paul E. Riley may have had *ex parte* communications with the jury during its deliberations in Alexander's case.[2] After an investigation, Alexander filed a motion for

---

1. Count I charged Alexander with conspiracy to distribute cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1) & § 846; Counts II, III, and IV charged him with distributing crack and aiding and abetting its distribution in violation of 21 U.S.C. § 841(a)(1) and (2); and Count V charged him with possessing crack with intent to distribute it in violation of 21 U.S.C. § 841(a)(1).

2. Judge Riley presided over Alexander's trial. Judge Riley is no longer an active district judge due to a medical disability which renders him unable to efficiently discharge the duties of his office.

a new trial pursuant to Federal Rule of Criminal Procedure 33.[3]

Therein, Alexander argues that, because he was unaware of the *ex parte* communications until after the jury had reached its verdict, Judge Riley's *ex parte* communications with the jury constitute newly discovered evidence entitling him to a new trial. Moreover, Alexander contends that Judge Riley had improper contacts with the jury when he responded to its written questions without first consulting him and all counsel in open court[4] and when he entered the jury room and spoke to the jurors after they had begun to deliberate. Based upon these *ex parte* communications, Alexander asks the Court to grant him a new trial.

The Government admits that Judge Riley erred in responding to the jury's inquiries without first consulting Alexander and all counsel. However, the Government claims that this error was harmless and, therefore, does not entitle Davis to a new trial.

As for Alexander's allegation that Judge Riley may have entered the jury room during the jury's deliberations, the Government asserts that further inquiry must be made before granting Alexander a new trial. Specifically, the Government asks the Court to either conduct an evidentiary hearing or allow the parties to interview the jurors themselves about the nature of Judge Riley's *ex parte* contact referred to in Court Security Officer Glenn Wright's affidavit. Accordingly, the Government asks the Court to deny Alexander's motion for a new trial with respect to Judge Riley's *ex parte* handling of the two jury notes and to conduct an evidentiary hearing to determine the facts and circumstances surrounding any other *ex parte* contacts which Judge Riley might have had with the jury.

## II. APPLICABLE LAW

Federal Rule of Criminal Procedure 33 provides that "the court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice." *Id.* "Probably the most frequent basis for a Rule 33 motion—and the only one specifically mentioned in the rule—is one 'based on the ground of newly discovered evidence.'" *United States v. Woolfolk*, 197 F.3d 900, 905 (7th Cir.1999), quoting *United States v. Kamel*, 965 F.2d 484, 490 (7th Cir.1992). The United States Court of Appeals for the Seventh Circuit has explained:

> To receive a new trial based on newly discovered evidence, the defendant must demonstrate that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial.

*Woolfolk*, 197 F.3d at 905.

■ However, when the basis for a new trial is newly discovered evidence that the trial judge has had improper contact with a juror or jurors, the test is somewhat different because "[a]ny *ex parte* meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities of error." *United States v. United States Gypsum Co.*, 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). As the United States Supreme Court has opined:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial

---

**3.** Chief Judge Gilbert assigned the above-captioned case to this Court—along with six other criminal cases in which Judge Riley allegedly had *ex parte* communications with the juries—after all of the district judges in the United States District Court for the Southern District of Illinois recused themselves.

**4.** The first note requested a copy of the transcript of one of the witness' testimony. Judge Riley responded: "No, I am sorry you must rely upon your memory of his testimony." The second note asked for an audio tape player which Judge Riley supplied to the jury.

about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), citing *Mattox v. United States,* 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Moreover, the Seventh Circuit has stated that "the unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a defendant's right to be present during trial proceedings."[5] *United States v. Smith,* 31 F.3d 469, 471 (7th Cir.1994).

 Before the Government is put to its burden of showing that an improper contact by an outsider with the jury is harmless, however, a defendant must first establish that an *ex parte* communication occurred. *See Owen v. Duckworth,* 727 F.2d 643, 646 (7th Cir.1984)(holding that the defendant bears the burden of proving outside contact with the jury); *see also United States v. Wilson,* 715 F.2d 1164, 1172 (7th Cir.1983)(holding that while "private communications between jurors and others are presumptively prejudicial[,][t]here can be no prejudice ... in the absence of any such communication."); *see also United States v. Heater,* 63 F.3d 311, 321 (4th Cir.1995)(holding that the defendant bears the initial burden of demonstrating that the improper juror contact occurred, and only if the contact is established must the Government demonstrate absence of prejudice). The moving defendant must meet this burden by a preponderance of the evidence. *United States v.*

*Caro–Quintero,* 769 F.Supp. 1564, 1580 (C.D.Cal.1991); *see also United States v. Tarpley,* 945 F.2d 806, 811 (5th Cir.1991)(holding that the defendant must show that "improper communication of extrinsic information had likely occurred."); *see also United States v. Cousins,* 842 F.2d 1245, 1247 (11th Cir.1988)(holding that a defendant must make a "colorable showing" that an *ex parte* communication occurred).

Furthermore, "[a] determination of jury prejudice is complicated in the federal courts by the proscription against questioning jurors directly about the effect of the outside contact on their deliberations." *Owen,* 727 F.2d at 646. Federal Rule of Evidence 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

*Id.* Thus,

[r]ather than question the jurors directly, a district court must make findings of fact at two separate levels. First, the district court must find the basic, or subsidiary, facts—*e.g.,* the nature, content, and extent of the extra-judicial contact. Based on its findings of subsidiary

---

5. A defendant's right under Federal Rule of Criminal Procedure 43(a) to be present at every stage of his trial is "more far-reaching

than the right of presence protected by the Constitution." *United States v. Brown,* 571 F.2d 980, 986 (6th Cir.1978).

facts, the district court must then make the ultimate factual determination: whether the contact likely affected the juror's impartiality.

*Owen,* 727 F.2d at 646.

## III. ANALYSIS

In the instant case, the Court finds that it is more likely than not that Judge Riley had an *ex parte* communication(s) with the jury during Alexander's trial. *Tarpley,* 945 F.2d at 811. The Court believes that it can make this finding without the necessity of conducting an evidentiary hearing as suggested by the Government.[6]

▮ The Government is correct that a judge's failure to consult with counsel and a criminal defendant in open court prior to responding to a jury's communication can be considered "harmless error." *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985); *United States v. Patterson,* 23 F.3d 1239, 1254 (7th Cir.1994); *Verdin v. O'Leary,* 972 F.2d 1467, 1482 (7th Cir.1992). Moreover, the Government is correct that Judge Riley's error in this case should, generally, be considered harmless because he acted within his discretion in denying the jury's request for a transcript and in complying with the jury's request for an audio tape player. *See United States v. Welch,* 945 F.2d 1378, 1383 (7th Cir.1991)(holding "that juries are allowed with court approval to have properly authenticated tapes played during its deliberations."); *see also United States v. Howard,* 80 F.3d 1194, 1201–02 (7th Cir.1996) (holding that the district court did not abuse its discretion in denying the jury's request for a copy of a transcript). In addition, Judge Riley's error should, generally, be considered harmless because it appears that nothing Alex-

ander or his counsel could have said, had they been present, would have altered Judge Riley's response. *United States v. Rodriguez,* 67 F.3d 1312, 1316 (7th Cir. 1995).

It was, nevertheless, error for Judge Riley to have answered the jury's question without first consulting counsel and Alexander.

Furthermore, during an interview by Chief Judge Gilbert, David Agay (Judge Riley's law clerk who was assigned to this case) informed Chief Judge Gilbert that, during his tenure as Judge Riley's law clerk, he assisted Judge Riley in only four trials: *United States v. Bradley,* 98–30149, *United States v. Bishawi,* 97–40044, *United States v. Alexander,* 99–30067, and *United States v. Hodges,* 99–40009. Of those four trials, Agay had a specific recollection that Judge Riley entered the jury room and spoke with the jury while they were deliberating in three of the four cases, although he could not specify in which of the three cases the improper contact had occurred.[7] Thus, a 75% probability exists that Judge Riley had an *ex parte* communication with the jury in this case.

This 75% probability of an improper contact between Judge Riley and the jury is increased when Agay's testimony is considered with CSO Wright's testimony. In his affidavit, CSO Wright testified:

I recall that in *Alexander,* after Judge Riley had responded in writing to the jury notes, Judge Riley asked me if I had heard anything from the jury. Judge Riley then entered the jury room and asked the jury if it was close to a verdict. I believe that he entered the

---

6. Except for testimony regarding whether extraneous prejudicial information was improperly brought to the jury's attention, the Court cannot allow, authorize, or compel a juror to testify regarding anything which occurred during the course of the jury's deliberations and/or to what effect anything had upon the juror's mind or emotions which might have

influenced the jury's verdict. Fed.R.Evid. 606(b); *Owen,* 727 F.2d at 646.

7. In his affidavit, Agay also testified that "[o]n some occasions, I was not present in chambers when the jury sent a note. Sometimes, Judge Riley would receive the note, read it, go into the jury room, and close the door."

jury room two or three times in *Alexander*. I did not enter the room with him, and I do not know what he said to the jury.

Wright Affidavit ¶ 6. Moreover, during his interview with Chief Judge Gilbert, CSO Wright acknowledged that Judge Riley had entered into the jury room and had spoken with deliberating juries in cases other than *United States v. Von Briggs*, 99–30053, although he could not specify in which case it had happened. Based upon the testimony of CSO Wright and Agay and Judge Riley's error in answering the jury's questions, the Court believes that Alexander has made a colorable showing that an *ex parte* communication occurred.[8] *Cousins*, 842 F.2d at 1247.

■ The Court is mindful of and even sympathetic to the position in which the Government now finds itself, *i.e.*, having to rebut a presumption of prejudice without knowing, book and page, the specific instance of the *ex parte* communication which occurred between Judge Riley and the jury. Moreover, the Court is cognizant that mere speculation is insufficient to shift the burden to the Government. *See United States v. Davis*, 15 F.3d 1393, 1412 (7th Cir.1994)(holding that "[a] defendant's mere allegations of taint or his unsubstantiated suspicions do not necessitate inquiry by the court.").

However, Agay stated that Judge Riley entered the jury room in three of the four cases assigned to him as a law clerk, one of which was the instant case. Of even more importance, CSO Wright testified that Judge Riley entered the jury room in this case while the jury was deliberating. The Court believes that this evidence, the evidence that Judge Riley frequently entered the jury room during deliberations, and Judge Riley's improper response to the jury's question, when considered in sum, are sufficient to support a finding by a preponderance of the evidence that Judge Riley had an *ex parte* communication(s) with the jury in this case. *Caro–Quintero*, 769 F.Supp. at 1580. In making this finding, the Court is attentive to the Seventh Circuit's opinion in *United States v. Touloumis*, 771 F.2d 235 (7th Cir.1985), in which that court opined:

> notwithstanding the presence of a court reporter, a judge should not engage in a discussion with the jury in the jury room regarding the issues presented in the case after the jury has begun its deliberations. We noted that two important interests are undermined by such discourse between the judge and the jury during the jury's deliberations: (1) the appearance of justice, and (2) allowing the parties to make a contemporaneous record as to the context in which the judge's remarks are made.

*Id.* at 242, citing *United States v. Burns*, 683 F.2d 1056, 1058 (7th Cir.1982). This Court is thoroughly convinced that any finding other than that Judge Riley engaged in *ex parte* communications with the jury in the above-captioned case would forever taint Alexander's conviction and would do a disservice to the appearance of justice. *Id.*

Having determined that an improper contact occurred between Judge Riley and the jury, the burden shifts to the Government to prove that the contact was harmless to Alexander. *Remmer*, 347 U.S. at 229, 74 S.Ct. 450. The Court finds that the Government has not met this burden.

---

**8.** In addition, Agay testified that he "observed Judge Riley speaking to jurors outside the courtroom on several occasions." Although Agay went on to say that the discussions merely concerned mundane matters such as the weather, given Judge Riley's improprieties with juries in other cases, the Court is concerned that even these, perhaps, innocent contacts with the juries might have had an influence on the juries' partiality despite Agay's statement that he did not see or hear Judge Riley discuss the substances of any case during these contacts. At a minimum, given the circumstances surrounding these seven cases and Judge Riley's medical condition, it leaves one with the impression that "[s]omething is rotten in the state of Denmark." WILLIAM SHAKESPEARE, HAMLET, act 1, sc. 4.

The Government's burden in this regard is a "heavy" one. *Id.; Schaff v. Snyder,* 190 F.3d 513, 533–34 (7th Cir. 1999). The Government must demonstrate "that there exists no 'reasonable possibility that the jury's verdict was influenced by an improper communication.'" *United States v. Cheek,* 94 F.3d 136, 141 (4th Cir.1996), quoting *Stephens v. South Atl. Canners, Inc.,* 848 F.2d 484, 488–89 (4th Cir.1988); *see United States v. Carter,* 973 F.2d 1509, 1515 (10th Cir.1992), quoting *United States v. de Hernandez,* 745 F.2d 1305, 1310 (10th Cir.1984)(holding that in order "[t]o avoid a new trial under the plain error analysis, the record must completely 'negative[ ] any reasonable possibility of prejudice arising from such error.'").

The Court has made a finding of fact that Alexander has made a colorable showing that an *ex parte* communication occurred between Judge Riley and the jury in this cause, and the Government has offered no evidence or argument to rebut the presumption of prejudice or to establish that the improper contact was harmless to Alexander. Therefore, the Court believes that this conduct likely affected the jury's impartiality. *Owen,* 727 F.2d at 646. This is so because juries tend to view the presiding judge as the embodiment of the law; the jury could have interpreted even an innocuous comment by Judge Riley or his body language (either correctly or incorrectly) as revealing his view of the case, thus influencing its deliberations and/or verdict. At a minimum, the contact(s) tarnished the appearance of justice and deprived the parties of their ability to make a contemporaneous record as to the context in which Judge Riley's remarks to the jury were made. *Touloumis,* 771 F.2d at 242.

In short, the Court cannot say, under the circumstances, that there exists no reasonable possibility that the jury's verdict was not influenced by an improper communication. *Cheek,* 94 F.3d at 141. A criminal defendant has a right to a fair trial, U.S. CONST. amend. VI, and a right to be present at every stage of the trial. Fed. R.Crim. Pro. 43(a); *see United States v. Coffman,* 94 F.3d 330, 335–36 (7th Cir.1996)(holding that "[t]he defendant is entitled to be present at all stages of his trial, ... and a judge's response to a note from the jury is one of those stages."); *see also United States v. Pressley,* 100 F.3d 57, 59–60 (7th Cir.1996) (holding that Rule 43(a)entitles a defendant to be present at all stages of his trial and that "[c]ommunication between the judge and the jury, or a single juror, is one of those stages."). Judge Riley's *ex parte* communication(s) with the jury deprived Alexander of both of these rights, and therefore, he is entitled to a new trial.

*Ergo,* Defendant's Motion for a New Trial is ALLOWED.