**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0054n.06

No. 11-5368

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jan 10, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| TONY CURRUTHERS, aka Tony Neely | ) THE WESTERN DISTRICT OF |
| | ) TENNESSEE |
| Defendant-Appellant. | ) |

Before:     KEITH, MARTIN and ROGERS, Circuit Judges.

**PER CURIAM**.  Defendant-Appellant Tony Curruthers was convicted by a federal jury on two counts of being a felon in a possession of a firearm in violation of 18 U.S.C. § 922(g).  He argues that: (1) there was insufficient evidence to prove that he possessed the firearms; (2) the district court abused its discretion in allowing an officer to testify that he was "one hundred percent" positive about Curruthers' identity; and (3) the district court imposed a procedurally and substantively unreasonable sentence.  For the following reasons, we hold: (1) the record was not devoid of evidence that Curruthers possessed the firearms at issue; (2) the officer's testimony was permissible to rehabilitate his credibility after it was attacked by defense counsel; and (3) Curruthers' sentence was not unreasonable.  Therefore, we **AFFIRM** the district court.  We address each of Curruthers' claims and the facts relevant to each one in turn.

## I.     Sufficiency of the Evidence

Being a felon in possession of a firearm consists of three elements.  Curruthers disputes only the element of possession.  Although no one ever observed him in physical possession of a firearm, no firearms were found on his person when he was arrested, and his fingerprints were not found on the firearms, the Government offered sufficient evidence for a jury to conclude that Curruthers possessed the firearms.

### A.     Factual Background

*Curruthers' Arrest*

On July 22, 2009, at approximately 12:00 p.m.,  Officer Felipe Boyce of the Memphis Police Department responded to a robbery call at a nearby Walgreens store.  While investigating the immediate area around the store, Officer Boyce saw a driver and passenger who were traveling in a 1987 Cadillac DeVille with a broken-out rear vent window.  Due to the broken window, Officer Boyce suspected the car might be stolen, a suspicion confirmed after he ran the car's tag number.  He then called for backup and began following the vehicle.

While Officer Boyce followed the Cadillac, the driver began watching him through the rear-view mirror.  As the Cadillac entered a residential neighborhood, Officer Boyce noted that the driver and passenger began "moving all around" in the vehicle and looking back and forth at each other.  Shortly thereafter, the driver stopped the Cadillac, and the unknown passenger exited the vehicle.  As Officer Boyce exited his patrol car to detain the passenger, the driver sped off.  Officer Boyce decided to abandon the passenger and pursue the Cadillac, suspecting that there might be some contraband in it.

A chase ensued through the residential area, continuing through red lights and stop signs in some instances. However, the Cadillac quickly began to stall and eventually came to a stop in front of a residence. Officer Boyce and the driver exited their respective vehicles, the driver exiting the Cadillac out of the passenger side. At this point, Officer Boyce saw the driver's face. He also observed that the driver was unusually dressed, wearing a white lab coat and white cotton gloves, as well as a black shirt and black-grayish pants. Officer Boyce pursued the driver on foot, losing sight of him for a couple of minutes after the driver jumped a fence into the backyard of a nearby residence. Over the dispatch radio, Officer Boyce relayed a description of the driver to other officers arriving on the scene and noted the direction in which the driver was heading.

Officer Cecil Davis, one of the responding officers, observed Curruthers run out of the backyard of a nearby residence. Based on Officer Boyce's radio description, Officer Davis detained Curruthers. Officer Boyce arrived shortly thereafter and identified Curruthers as the driver of the stolen Cadillac. Though Curruthers was sweating and out of breath, he was not wearing a white lab coat, white gloves, or black-grayish pants. These clothes were never found.

Officer Equinta Washington conducted an inventory search of the stolen Cadillac after Curruthers' arrest and recovered a black nylon bag, which was located between the vehicle's center console and front passenger seat. The following items were found inside the bag: (1) a loaded Hi Point .38 caliber semi-automatic pistol, (2) a loaded Colt .38 special caliber revolver, (3) one pair of gloves, (4) one ski mask, and (5) one walkie talkie.

*Trial Proceedings*

On October 27, 2009, Curruthers was indicted on two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). During the trial, Officer Boyce, Officer Davis, and Officer Washington testified consistently with the aforementioned facts on behalf of the Government.

Officer Juaquatta Harris, a deputy jailer, testified that she located jail phone calls made by Curruthers while he was housed at the Shelby County Jail. She reviewed and authenticated a disc that contained an excerpt of a call made by Curruthers. The call was played, relaying the following conversation:

Unknown Male: Yeah, they caught you with that thing?

Curruthers: *Nah, they uh, they found that shit in the car*.

Unknown Male: For real?

Curruthers: *Yeah, they didn't catch me in the car, you know what I'm saying*? . . . *Dave, he supposed to ran with that shit*.

The Government's final witness was Sergeant Robin Hulley of the Memphis Police Department. She testified that she chemically processed both firearms, but was unable to recover any latent fingerprints. At the conclusion of the Government's case, Curruthers made a Rule 29 motion for judgment of acquittal. The motion was denied. Curruthers chose to present proof. He did not renew the motion after resting.

In November 2010, the federal jury found Curruthers guilty on both counts. Curruthers now appeals, claiming the record is devoid of evidence that he possessed the firearms found in the Cadillac.

## B.     Standard of Review

For insufficiency-of-the-evidence claims, we view the evidence in the light most favorable to the prosecution to see if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Castano*, 543 F.3d 826, 837 (6th Cir. 2008) (quoting *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006)). We must draw all reasonable inferences and credibility determinations in support of the jury's verdict. *Id*. Because Curruthers failed to renew his motion for judgment of acquittal, we must uphold the conviction "absent a showing of a manifest miscarriage of justice." *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998). A miscarriage of justice exists "only if the record is devoid of evidence pointing to guilt." *Id*. (internal quotation marks omitted).

## C.     Proof of Possession

A defendant may be convicted under 18 U.S.C. § 922(g) based on either actual or constructive possession of a firearm. Both forms of possession may be proven by direct or circumstantial evidence. *Newsom*, 452 F.3d at 609 (citing *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005)). "Constructive possession exists when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007) (internal quotation marks omitted). Mere presence alone near a gun is insufficient to prove constructive possession.

*United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc). Instead, "[o]ther incriminating evidence must supplement a defendant's proximity to a firearm in order to tip the scale in favor of constructive possession." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).

Here, Officer Washington testified that the firearms were found in the Cadillac in a black duffel bag that contained a ski mask, a walkie talkie, and gloves. Officer Boyce also testified that he saw Curruthers exiting the Cadillac wearing a white lab coat. This could imply proof of a motive to possess the firearms because, taken together, these items could be considered tools of "the robbery trade." The jury might have concluded that the ski mask and clothes were meant to obscure Curruthers' identity and the guns were meant to help him procure and protect ill-gotten gains. *See United States v. Hatfield*, 815 F.2d 1068, 1072–73 (6th Cir. 1987) (holding that a loaded firearm found along with a police scanner and iron bars in a van the defendant was driving was "probative of [the defendant's] knowledge of the presence of the gun," because it "could be considered a tool of the burglary trade and useful in protecting ill-gotten booty").

Office Boyce testified that he saw Curruthers begin "moving all around" over the center console and passenger area where the firearms were found when Curruthers noticed that he was being followed by the police. Such a gesture implying control could rationally suggest that he had some power over the firearms and had knowledge that they were there. The jury might have concluded the gesture meant he was hiding the firearms or doing something else with them. *See United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999) (reasoning that officer testimony that he saw defendant "reaching" behind the passenger seat toward the location where a firearm was later found was "sufficient to link him to the gun").

The Government introduced an audio tape of a call Curruthers made from jail in which he was asked if he was caught "with that thing." Curruthers responded that "that shit" was found "in the car" and that "Dave"—presumably the unknown passenger in the vehicle—was "supposed to ran [sic] with that shit." Even if "that shit" was only meant to refer to everything but the guns—as Curruthers contends it does—it was not irrational to infer that the statement was in reference to the guns. *See Arnold*, 486 F.3d at 181–82 ("[W]e cannot overturn the jury's decision merely because it had to draw reasonable inferences . . . [T]he critical point is that the jury could have drawn different inferences from [the Government's] evidence, and our mandate is to affirm when the jury's choice was a rational one.").

For these reasons, the record was not devoid of any evidence of that Curruthers possessed the firearms.

## II.     Admission of Officer Boyce's Testimony

Curruthers contends that the district court committed an abuse of discretion by allowing Officer Boyce to testify on redirect that he was "one hundred percent" certain of Curruthers' identity. Curruthers asserts the testimony improperly went beyond the scope of cross examination. Because the testimony was given after Curruthers attacked the credibility of Officer Boyce's identification, Curruthers' contention lacks merit.

During cross-examination of Officer Boyce, defense counsel asked and confirmed that Officer Boyce had provided the information on Curruthers' arrest ticket. Defense counsel then noted that Curruthers' arrest ticket incorrectly stated that he had blond hair and blue eyes. When the Government objected to the admission of the arrest ticket on the basis that it was irrelevant, defense

counsel told the court during a sidebar that the questions about the ticket were "offered to impeach [Officer Boyce's] credibility." The court allowed the arrest ticket to be admitted into evidence, and defense counsel questioned Officer Boyce about the discrepancy on the ticket.

On re-direct examination, the Government asked Officer Boyce, "How positive are you about your identification here today?" Defense counsel objected to the question on the basis that it was outside the scope of cross-examination, but the objection was overruled. Officer Boyce responded that he was "one hundred percent" positive about his identification. The district court then allowed defense counsel to re-cross Officer Boyce, which involved more questions about the incorrect description of Curruthers in the arrest ticket.

## A. Standard of Review

We review the conduct of criminal trials for an abuse of discretion. *United States v. Wilson*, 27 F.3d 1126, 1129 (6th Cir. 1994). Trial judges have "broad discretion in determining the scope of redirect examination and in assessing the relevancy of proffered testimony." *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994) (quoting *United States v. Touloumis*, 771 F.2d 235, 241 (7th Cir. 1985)). There is an abuse of discretion only if we are firmly convinced that a mistake has been made. *United States v. Newsom*, 452 F.3d 593, 601 (6th Cir. 2006) (citing *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998)). Pursuant to the harmless error rule, any improperly admitted evidence must have "prejudiced the outcome of the trial and resultant convictions" for a defendant to obtain reversal. *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999).

B. **Analysis**

The Government's question was a response to an attack on Officer Boyce's credibility. Since Officer Boyce provided the information on the arrest ticket, the questions regarding the ticket's errors implied that his identification of Curruthers was erroneous as well. Defense counsel stated as much during a sidebar regarding the admissibility of the arrest ticket. Because Curruthers opened the door on cross examination regarding the credibility of Officer Boyce's identification, we are not firmly convinced that the court erred in allowing testimony regarding the certainty of his identification on redirect. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) ("[C]ross-examination attacking a witness's credibility and character will open the door to redirect examination rehabilitating the witness.") (internal citation and quotation marks omitted). Presented with the discrepancy, it was for the jury to come to its own conclusion about Officer Boyce. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949). Yet even if the district court had abused its discretion, Curruthers fails to show how the testimony prejudiced the outcome of the trial when the district court allowed him to re-cross Officer Boyce.

III. **Reasonableness of the Sentence**

Finally, Curruthers claims his sentence is procedurally and substantively unreasonable. He asserts that the court impermissibly overemphasized his criminal history, some of it remote, in the formulation of his sentence and that the court disregarded expert medical opinion diagnosing him as having borderline intellectual functioning. We disagree.

Prior to sentencing, a Pre-Sentence Investigation Report ("PSIR") was prepared, which assigned Curruthers a total offense level of 33 and placed him into a criminal history category of VI, resulting in an applicable guideline range of 235–93 months of imprisonment. The PSIR also found that Curruthers was referred to Southeast Mental Health Center on April 21, 2009, where he was diagnosed as borderline intellectual functioning. On March 22, 2011, a sentencing hearing was held. Without objection, the sentencing court adopted the findings of fact and legal conclusions outlined in the PSIR.

The district court discussed the serious nature of the offense, noting that it involved multiple firearms, a stolen vehicle that contained suspicious items (the ski mask, walkie talkie, and gloves), reckless driving through a residential neighborhood, and an attempt to evade arrest by flight. The court also noted that no one was hurt.

The district court discussed Curruthers' criminal history, noting he was a category VI. The court also noted that he had thirty criminal history points when he was sentenced for armed bank robbery in 2004, but due to the age of his prior convictions, had only twenty-one criminal history points at the time of sentencing. The district court repeatedly expressed concern that Curruthers committed the instant offense so close in time to his release in February 2009 for the 2004 conviction.

The district court addressed Curruthers' personal life and mental health. Regarding his medical diagnosis, the judge thought Curruthers appeared to "operate[] at a higher level of intellectual functioning. He's smarter than that. . . . He's got a lot of savvy." R. 59 at 46–47. However, the judge immediately added that he would "not try . . . to get behind the diagnosis because

[the judge was] not a professional." *Id*. The district court imposed a sentence of 241 months of imprisonment—a sentence near the low-end of the applicable guideline range.

### A.        Standard of Review

We review a district court's application of the United States Sentencing Guidelines ("Guidelines") *de novo*. *United States v. Hicks*, 4 F.3d 1358, 1361 (6th Cir. 1993). However, since the Guidelines are "advisory only," the touchstone of review is reasonableness, which applies "regardless of whether the sentence imposed is inside or outside the Guidelines range." *United States v. Herrera-Zuniga*, 571 F.3d 568, 581 (6th Cir. 2009) (internal quotation marks and citation omitted). Our review has a procedural component and a substantive component. *Id*.

Because Curruthers failed to object to the procedural reasonableness of the sentence when given the opportunity, we review it for plain error. *Herrera-Zuniga*, 571 F.3d at 580. There must be (1) error that is (2) obvious and clear which (3) affected the defendant's substantial rights and (4) affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*. at 589. Procedural reasonableness requires the district court to properly calculate the applicable advisory Guidelines range, consider the enumerated § 3553(a) factors and the parties' arguments for a sentence outside the Guidelines range, and adequately articulate its reasoning for imposing the chosen sentence. *United States v. Petrus*, 588 F.3d 347, 351–52 (6th Cir. 2009). While the sentencing court must make an "individualized assessment of the appropriate sentence based on the facts presented," *Herrera-Zuniga*, 571 F.3d at 582 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)), the district court only needs to "provide a clear explanation of why it has . . . chosen the

particular sentence imposed, regardless of whether it is within or outside of the Guidelines." *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007).

A sentence within the calculated Guidelines range is presumed to be substantively reasonable. *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008). We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008).

**B.      Analysis**

Criminal history is one of the § 3553(a) factors to be considered when sentencing. With twenty-one criminal history points, Curruthers was placed into criminal history category VI—the highest level category. What he characterizes as impermissible consideration of remote criminal history is a remark that his score had been even higher at the time of a 2004 conviction for armed robbery. Curruthers has a long criminal history, and this played a significant role in sentencing. However, there is nothing in the record showing that the sentencing judge placed an *unreasonable* amount of emphasis on his criminal history.

Curruthers also claims that the court disregarded expert medical opinion placing him at borderline intellectual functioning. He points to a single statement by the court expressing some skepticism regarding the diagnosis. The court, nevertheless, immediately deferred to the diagnosis because the judge was not a medical expert. When placed in context, the statement does not convey a "disregard" of the medical opinion as Curruthers would suggest.

While Curruthers' mental health and the fact no one was hurt in the instant offense kept the sentence from going into the higher echelon of his Guidelines range, the court also concluded that:

(1) Curruthers presented a risk to the public due to his violent criminal history; (2) he had a "disturbing" disrespect for the law, as demonstrated by his kicking a marshal during prisoner transport for his 2004 armed robbery conviction; and (3) he presented a high recidivism risk. At the time of Curruthers' arrest for the instant offense, he was on supervised release for felony bank robbery. Therefore, we cannot find any plain error and cannot say that the court erred procedurally in sentencing Curruthers. His sentence is presumed to be substantively reasonable because it is within his Guidelines range. Since Curruthers' arguments failed to show procedural unreasonableness, they also fail to rebut this presumption.

## IV. Conclusion

For the aforementioned reasons, we **AFFIRM** both the conviction and the sentence of the district court.